1  MICHAEL S. LAWSON (SBN 048172)
   City Attorney
2  RAFAEL E. ALVARADO JR. (SBN 247904)
   Assistant City Attorney
3  MICHAEL VIGILIA (SBN 228353)
   Assistant City Attorney
4  JOSEPH BRICK (SBN 253132)
   Deputy City Attorney
5  CITY OF HAYWARD
   777 B Street, 4th Floor
6  Hayward, CA 94541-5007
   Tel: (510) 583-4450
7  Fax: (510) 583-3660

8  Attorneys for Defendant City of Hayward,
   Former Police Chief Ron Ace, Officers Loring Cox,
9  Michael Miller and Robert Purnell

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13

14  CHINA McKAY AND JONATHAN          Case No. CV 12-1613
15  PORTERO-BROWN, INDIVIDUALLY AND
    AS SUCCESSORS-IN-INTEREST TO THE
16  ESTATE of JESSE PORTER; and JESSE    **DEFENDANTS' MOTION FOR SUMMARY
    PORTER JR., INDIVIDUALLY, AS         JUDGMENT, OR IN THE ALTERNATIVE
17  SUCCESSOR-IN-INTEREST TO THE         FOR SUMMARY ADJUDICATION OF
                                         CLAIMS, MEMORANDUM OF POINTS
18  ESTATE OF JESSE PORTER, AND AS       AND AUTHORITIES**
    PERSONAL REPRESENTATIVE OF THE
19  ESTATE OF JESSE PORTER,

20              Plaintiffs,              Date: May 29, 2013
                                         Time: 1:00 p.m.
21  v.                                   Crtrm: A, 15th Floor
                                              450 Golden Gate Avenue
22  CITY OF HAYWARD, FORMER HAYWARD           San Francisco, California
    POLICE CHIEF RON ACE, IN HIS              The Honorable Nathanael M. Cousins
23  INDIVIDUAL AND OFFICAL CAPACITIES,
    HAYWARD POLICE OFFICERS LORING
24  COX, MICHAEL MILLER and ROBERT
    PURNELL, and DOES ONE through TWENTY
25  FIVE, inclusive,

26              Defendants.

27

28

---

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES

I.    STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    FIRST CAUSE OF ACTION – 42 U.S.C. SECTION 1983:

            INDIVIDUAL POLICE OFFICERS . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            (1)   The Canine Bite Upon an Unconscious Jesse Porter Does Not Constitute A
                  Seizure Under Applicable Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            (2)   The Canine Bite Upon an Unconscious Jesse Porter Does Not Constitute
                  Excessive Force Under Applicable Law and the Individual Police Officers are
                  Entitled to Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . 12

      B.    SECOND CAUSE OF ACTION – 42 U.S.C. SECTION 1983:

            CITY OF HAYWARD AND FORMER POLICE CHIEF RON ACE . . . . . . . . 14

            (1)   Former Police Chief Ron Ace in his Official Capacity  . . . . . . . . . . . . . . . . . . . 14

            (2)   Policy, Custom, Practice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            (3)   Failure to Train, Supervise, Control  . . . . . . . . . . . . . . . . . . . . . . . . 17

      C.    THIRD CAUSE OF ACTION – 42 U.S.C. SECTION 1983:
            FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM
            AGAINST ALL DEFENDANTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      D.    FOURTH CAUSE OF ACTION – CALIFORNIA CIVIL CODE
            SECTION 3342(C): ALL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

E.   FIFTH CAUSE OF ACTION – GENERAL NEGLIGENCE
     CALIFORNIA GOVERNMENT CODE § 815.2: ALL DEFENDANTS . . . . . 20

     (1)   Police Officers Robert Purnell and Officer Michael Miller . . . . . . . . . . 21

     (2)   The City of Hayward and former Police Chief Ron Ace . . . . . . . . . . . 21

F.   SIXTH CAUSE OF ACTION – ASSAULT AND BATTERY:
     ALL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

G.   SEVENTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF
     EMOTIONAL DISTRESS: ALL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . 22

H.   EIGHTH CAUSE OF ACTION – CALIFORNIA CIVIL CODE
     SECTION 52.1: ALL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

I.   NINTH CAUSE OF ACTION – WRONGFUL DEATH:
     ALL DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

J.   PUNITIVE DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

**STATE COURT CASES**

*Austin B. v. Escondido Union Sch. Dist.* (2007), 149 Cal.App. 4th 860, 883 . . . . . . . . . . . . . .  23

*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903  . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209 . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Edson v. City of Anaheim* (1998), 63 Cal.App.4th 1269, 1272  . . . . . . . . . . . . . . . . . . . . . . .  22

*Shoyoye v. County of Los Angeles* (2012), 203 Cal.App. 4th 947, 956  . . . . . . . . . . . . . . . . . .  24

**FEDERAL COURT CASES**

*Anderson v. Creighton* (1987) ,483 U.S. 635, 640  . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

*Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 256. . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Beck v. Texas State Bd. of Dental Examiners* (5th Cir. 2000), 204 F.3d 629, 633-634 . . . . . . . .  13

*Bd. of County Comm'rs of Bryan County v. Brown* (1997), 520 U.S. 397, 404  . . . . . . . . . . . .  15

*Bingue v. Prunchak* (9th Cir.2008), 512 F.3d 1169, 1176.  . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Brandon v. Holt* (1985), 469 U.S. 464, 471-472 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Browell v. Davidson*,  (2009) 595 F.Supp.2d 907, 916  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Brower v. Inyo County* (1989), 489 U.S. 593, 596  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Boyd v. City of Oakland* (2006), 458 F.Supp.2d 1015, 1051–1052 . . . . . . . . . . . . . . . . . . . . . .  22

*Burns v. Reed* (1191), 500 U.S. 478, 494-95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*City of Canton v. Harris* (1989), 489 U.S. 378, 389 . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Clay v. Conlee* (8th Cir.1987), 815 F.2d 1164, 1170 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*County of Sacramento v. Lewis* (1998), 523 U.S. 833, 844 . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Crawford-El v. Britton* (1998), 523 U.S. 574 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Crumpton v. Gates* (1991), 947 F.2d 1418, 1420 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dennis v. Town of Loudon*, 2012 WL 4324932 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gangstee v. County of Sacramento*, 2010 WL 112650 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Groh v. Ramirez* (2004), 540 U.S. 551, 567 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kentucky. v. Graham* (1985), 473 U.S. 159, 167, n.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lee v. City of Los Angeles* (9th Cir. 2001), 250 F.3d 668, 681 . . . . . . . . . . . . . . . . . . . . . . 17

*Meade v. Grubbs* (10th Cir.1988), 841 F.2d 1512, 1528. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Merritt v. County of Los Angeles* (9th Cir. 1989), 875 F. 2d 765, 770 . . . . . . . . . . . . . . . . . 17

*Mitchell v. Forsyth* (1985), 472 U.S. 511, 526 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Monell*, 436 U.S. at 690, n. 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*Oviatt By and Through Waugh v. Pearce* (1992), 954 F.2d 1470, 1477-1478 . . . . . . . . . . . . . 16

*Polk County v. Dodson* (1981), 454 U.S. 312, 325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Porter v. Osborn* (9th Cir.2008), 546 F.3d 1131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Rogers v. City of Kennewick*, 304 F. Appx.599 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 9

*Redman v. County of San Diego* (9th Cir. 1991), 942 F. 2d 1435, 1446 . . . . . . . . . . . . . . . . 18

*Romberg v. Nichols* (9th Cir. 1992), 953 F.2d 1152, 1160. . . . . . . . . . . . . . . . . . . . . . . . . 8

*Romero v. Kitsap County* (9th Cir. 1991), 931 F.2d 624, 627 . . . . . . . . . . . . . . . . . . . . . . . 13

*Saucier v. Katz*, 533 U.S. 194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Scott v. Henrich* (9th Cir.1994), 39 F.3d 912, 915 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. Wade* (1983), 461 U.S. 30, 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Thompson v. City of Los Angeles* (9th Cir. 1989), 885 F.2d 1439, 1444; . . . . . . . . . . . . . . . . . 17

*Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998 . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wilkinson v. Torres* (9th Cir.2010), 610 F.3d 546, 554 . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**CALIFORNIA CODES**

*Civil Code section 52.1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*California Civil Code Section 3342*(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*California Civil Code §3294* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*California Code of Civil Procedure Section 377.60* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*California Government Code § 815.2(a)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*California Government Code § 815.2(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*California Government Code § 820.4* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*California Government Code § 820.8.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

1

**FEDERAL CODES**

2

*42 U.S.C. Section 1983* ..................................................... *7, 8, 13,15, 16, 18, 19*

3

4

*Fed.R.Civ.P. 56(a)* .......................................................... *7*

5

*Fed.R.Civ.P. 56(c)* .......................................................... *7*

6

*Fed. R. Civ. P. 56 (d)* ....................................................... *8*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF THE CASE

This case involves a lawsuit alleging violation of Jesse Porter and plaintiffs' rights based upon state and federal law theories of liability.  At the heart of the matter is an allegation that Defendant Officer Loring Cox used his police K-9 "Nicky" to intentionally seize and apply excessive force upon Mr. Porter during a police search for two armed robbery suspects.  Mr. Porter was not the suspect and he was lying unconscious outside of his mobilehome prior to the arrival of Officer Cox and his K-9.  According to plaintiff, this unintended K-9 bite of an unconscious Jesse Porter is tantamount to a civil rights violation.

Contrary to plaintiffs' assertions, defendants maintain the undisputed evidence shows that at no time did Officer Loring Cox intend to seize Jesse Porter, nor did Officer Cox direct any physical contact with him.  Rather, Officer Cox and his K-9 were engaged in a search of two armed suspects.  Mr. Porter was lying unconscious in the path of the trail and Officer Cox was not aware of his presence.  This is exemplified by the fact that Officer Cox never ordered his K-9 to "apprehend."  Officer Cox was not aware that Mr. Porter was in the immediate area and lying in the bushes as he proceeded with his dog on its scent trail.  Officer Cox also did not subject Jesse Porter to an intentional tort in the form of assault, battery and/or infliction of emotional distress.   Furthermore, the facts establish that Officers Purnell and Miller did not engage in any culpable behavior and are entitled to summary judgment *in toto*.

Plaintiffs' complaint is defective as it names former Police Chief Ron Ace in his official capacity as well as the City of Hayward.  Suits against a municipal officer in the officer's official capacity are tantamount to suits against the entity itself.  As the City of Hayward is already named in this suit, the inclusion of former Police Chief Ron Ace is redundant and unnecessary.

Lastly, plaintiff Jonathan Portero-Brown lacks standing to pursue a claim of wrongful death under California law.  The California Code of Civil Procedure establishes a limit as to the specific heirs that may pursue claim and Mr. Portero-Brown is not authorized to pursue a wrongful death action.   Mr. Portero-Brown is not a child of, nor was he adopted by, Mr. Porter. Therefore, he must be dismissed as a plaintiff for lack of standing.

II.   **STATEMENT OF FACTS**

On May 29, 2011, at approximately 10:30 p.m., officers from the Hayward Police Department ("HPD") were dispatched to respond to an armed robbery at a business, a Domino's Pizza, located at 22962 Clawiter Road in Hayward, CA. (Declaration of Officer Loring Cox (hereafter "Cox Declaration"), para. 10, and Exhibit A, filed herewith; (Declaration of Officer Robert Purnell (hereafter "Purnell Declaration"), para. 2, filed herewith; (Declaration of Officer Michael Miller (hereafter "Miller Declaration"), para. 2, filed herewith.)   A 911 call regarding a robbery with a gun is categorized as a high-priority by the Hayward Police Department (Deposition of Craig Fovel (hereafter "Depo.Fovel"), pg. 19-20.)

Officer Craig Fovel was one of the first responding police officers to arrive at the Domino's Pizza and made contact with the victims of the armed robbery.   At 10:36 p.m., Officer Fovel relayed additional information through his police radio concerning the description and flight path of the suspect. (Depo.Fovel, pg. 26-28.)  The suspect was reportedly armed with a semi-automatic weapon and fled on foot in a north direction towards a Jack-in-the-Box or an east direction towards North Lane. (Depo.Fovel, pg. 26-28.)  Joseph Rubalcava was also an early arriving Hayward police officer.  (Deposition of Joseph Rubalcava (hereafter "Depo. Rubalcava"), pg. 15.)

The Domino's Pizza was equipped with surveillance cameras inside and outside of the restaurant, including a camera with a view of the parking lot on the north side of the business. (Depo.Fovel, pg. 36-37.)  The manager of the Dominos, Shakaib Rahimi, arrived at the store to provide Officers Fovel and Rubalcava access to the security video. (Depo.Fovel, pg. 35.)  The video showed that two suspects were involved in the robbery, one stayed outside of the restaurant as a lookout and the second suspect committed the armed robbery in the store. (Depo.Fovel, pg. 36-37; Depo. Rubalcava, pg. 23-24.)   The video demonstrated that the suspects approached the Domino's through the parking lot on the north side of the business. (*Id.*) It also confirmed that the suspects fled east through the same parking lot towards Saklan Road. Notably, this is the route taken by Officer Cox and his canine partner to begin the search.

1    Officer Cox and canine Nicky responded to the scene and met up with Officer Robert

2  Purnell and Officer Michael Miller shortly thereafter. (Cox Declaration, para. 11-13; Purnell

3  Declaration, para. 4; Miller Declaration, para. 4.)   Officers Purnell and Miller would serve as the

4  cover officers on the search for the suspects. (Cox Declaration, para. 13; Purnell Declaration,

5  para. 5; Miller Declaration, para. 5. )   Officer Cox determined that the clearest source of scent

6  would be the driveway where the suspects fled and instructed Nicky to begin tracking. (Cox

7  Declaration, para. 14.)

8    Nicky cast out on the search, sniffed the ground and displayed tracking behavior.  (Cox

9  Declaration, para. 15.) The officers followed Nicky in an eastbound direction through the

10  Domino's parking lot until they reached Saklan Road. (Cox Declaration, paras. 15-16; Purnell

11  Declaration, para. 6; Miller Declaration, para. 7.) Upon reaching Saklan Road, Officer Cox

12  observed that Nicky continued to show trailing behavior as Nicky made a left turn onto Saklan in

13  a northbound direction. (Cox Declaration, para. 16.)

14    The officers traveled north along Saklan until they reached the intersection with West

15  Winton Avenue. (Cox Declaration, para. 16.) This portion of West Winton mainly serves the

16  commercial traffic to the east and there is significantly less traffic after business hours and

17  especially at 10:30 p.m.   At the corner of Saklan and West Winton, Nicky displayed no positive

18  indication of scent towards a west direction.  (Cox Declaration, para. 17.) Since the Hayward

19  Municipal Airport is located north of the location, Officer Cox decided to cross to the east side of

20  Saklan. (*Id.*)

21    On the east sidewalk of Saklan, Officer Cox observed Nicky display trailing behavior and

22  continued the trail eastbound on West Winton Avenue. (Cox Declaration, para. 18.)  As Nicky

23  is trained to follow the same scent throughout a trail, Officer Cox believed Nicky picked up the

24  original scent. (*Id.*) The officers traveled east along West Winton Boulevard until Nicky turned

25  south down a driveway of a commercial complex. (Cox Declaration, para. 19; Purnell

26  Declaration, para. 7; Miller Declaration, para. 8.)

27    Nicky sprinted down the driveway indicating a strong scent and stopped at the base of an

28  eight-foot concrete wall. (Cox Declaration, para. 19.)  The concrete wall separates the

1  commercial complex on the north side from a mobilehome park on the south side.  The

2  mobilehome is called the Mobile Country Club and located at 1200 West Winton Avenue in

3  Hayward.  At the base, Nicky pawed at the wall, indicating that he wanted to continue over the

4  wall and did not signal in any other direction.  (Cox Declaration, para. 20; Purnell Declaration,

5  para. 8; Miller Declaration, para. 9.)  At this point, the officers and Nicky had traveled a total

6  distance of approximately half a mile.

7       The officers observed pallets in the surrounding area of the business complex.  (Cox

8  Declaration, para. 21; Purnell Declaration, para. 9; Miller Declaration, para. 10.)  A pallet was

9  leaned against the concrete wall to allow Officer Cox to look over the wall.  (*Id.*)  Officer Cox

10  looked over and observed the backyards of several mobilehomes, but did not see any people in

11  the backyard area.  (Cox Declaration, para. 21.)

12       The backyards of these mobilehomes are not enclosed by fencing on any side yards.

13  Rather, as is common in many mobilehome parks, the individual mobilehomes are situated next

14  to one another without fencing that separates each unit.  Therefore, the incident location is not an

15  enclosed area such as a fenced backyard for a single-family home.  The only fence in the area is

16  the large concrete wall separating the mobilehome park from the business complex.

17       Officer Cox decided to continue the trail of the suspect on the south side of the wall.

18  (Cox Declaration, para. 22.)  Based upon the suspect's flight from a robbery scene, the suspect's

19  possession a semi-automatic handgun and the location not being an enclosed area, Officer Cox

20  did not give a warning prior to entering the mobilehome park.  (Cox Declaration, para. 23.)

21  Officer Cox picked up Nicky by the canine's harness and climbed the pallet onto the wall.  (Cox

22  Declaration, para. 24.)  He then straddled the wall and lowered Nicky by the canine's harness

23  and leash onto the ground on the south side of the wall.  (*Id.*)  Nicky was placed in a down

24  position as Officer Cox jumped down from the wall onto the south side.  (*Id.*)

25       Officer Cox gave Nicky a command to "track" in order to continue the search for the

26  armed robbery suspect.  (*Id.*)  Nicky was never let off of his leash, nor was Nicky ever given a

27  command to "apprehend."  (*Id.*)   Officer Cox maintained a visual of Nicky until the canine

28  entered the bushes near a shed structure attached to a mobilehome.  (Cox Declaration, para. 26.)

1   Officer Cox then heard Nicky pushing against the ground and believed Nicky found the suspect.

2   Officer Cox unholstered his firearm for his own protection and neared the person. (*Id.*)  He

3   observed the upper body of a person and determined he was not an armed suspect. (*Id.*)  In

4   abundance of caution, Officer Cox ran over to simultaneously verbally and physically command

5   a release. (*Id.*)  Officer Cox did so in order to avoid any further damage in case the person

6   moved and the canine perceived the move as resistance. Nicky obeyed the command.  (*Id.*)

7   The person was later identified as Jesse Porter. (*Id.*)  The maximum distance between the base

8   of the wall and the location of where Mr. Porter was found lying unconscious was 20 feet.

9   (Deposition of Lisa Reinke (hereafter "Depo. Reinke"), pg. 38-39.)

10          Mr. Porter appeared unconscious at the time of the contact. (Cox Declaration, para. 27.)

11   He did not make any noise during the bite and did not move in response to the bite. (Cox

12   Declaration, para. 27.)  Hayward Fire Department staff arrived to provide Mr. Porter medical

13   care, including Firefighters Jeff Dimick and Earl Boles. (Deposition of Jeff Dimick (hereafter

14   "Depo. Dimick"), pg. 20.)  Firefighter Dimick observed that Mr. Porter was not acting alert or

15   oriented. (Depo. Dimick, pg. 20.)  The Hayward Fire Department report documents that Mr.

16   Porter suffered from an altered level of consciousness. Mr. Porter was transported to Eden

17   Medical Center by paramedics for medical treatment to the left leg injury. (*Id.*)  Officer Cox

18   followed the ambulance to the hospital. (*Id.*)  At the hospital, Officer Cox made contact with Mr.

19   Porter as he was receiving medical treatment. (Cox Declaration, para. 30.)  Mr. Porter did not

20   have any recollection of the incident or the canine biting him. (*Id.*)  Mr. Porter did not recollect

21   lying down outside of the shed of his mobilehome. (*Id.*)

22          On May 30, 2011, Officer Cox again visited Mr. Porter at Eden Hospital. (Cox

23   Declaration, para. 31.)  Mr. Porter recalled falling outside of his shed earlier in the evening and

24   losing consciousness. (*Id.*)  Specifically, he recalled going to his shed during daylight sometime

25   after 7:30 p.m. to sweep up. (The sunset time for May 29, 2011 was 8:22 p.m.)  Mr. Porter

26   recounted stepping on a rock and falling outside of the shed. (*Id.*)  He then lost consciousness

27   and did not recall anything after that point, including the canine bite which occurred several

28   hours later while Mr. Porter was still unconscious. (*Id.*)

III.    **STANDARD OF REVIEW**

A party may move for summary judgment on a "claim or defense" or "part of...a claim or defense." (Fed.R.Civ.P. 56(a).)    Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." (Fed.R.Civ.P. 56(c).)    The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admission, or affidavits which demonstrate the absence of a triable issue of material fact. (*Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323.) However, the party need not disprove the nonmoving party's case. (*Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 256.)

Where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. (*Celotex*, 477 U.S. at 324-325.) The burden then shifts to the non-moving party to show that there is a genuine issue for trial.    (*Celotex*, 477 U.S. at 324.)

An issue is "genuine" if it is one that "can be resolved only by a finder of fact because [it]...may reasonably be resolved in favor of either party." (*Anderson*, 477 U.S. at 250.)   To overcome a motion for summary judgment, the nonmoving party must establish that a genuine factual issue exists, and that this factual issue is material.

In the alternative, the federal rules allow a court to grant summary adjudication by determining which material facts exist which are without substantial controversy and which facts are in good faith controverted. If the court determines there are material facts which are without substantial controversy, judgment as a matter of law can be rendered. (Fed. R. Civ. P. 56 (d).)

IV.    **LEGAL ARGUMENT**

A.    **FIRST CAUSE OF ACTION – 42 U.S.C. SECTION 1983: INDIVIDUAL POLICE OFFICERS**

Plaintiffs allege the that Defendant Officers Loring Cox, Robert Purnell and Michael Miller violated Mr. Porter's constitutional rights pursuant to 42 U.S.C. Section 1983.  Section

1    1983 is a procedural device for enforcing constitutional provisions and federal statutes.

2    (*Crumpton v. Gates* (1991), 947 F.2d 1418, 1420.)   The section does not create or afford

3    substantive rights. (*Id.*)

4        Plaintiffs' first cause of action asserts that Defendant Officers Loring Cox, Robert Purnell

5    and Michael Miller are liable in an alleged seizure of Mr. Porter upon encountering him pursuant

6    to a canine search. (*Complaint*, at paras. 30-35.) Plaintiffs further allege that Defendant Officers

7    Cox, Purnell and Miller engaged in excessive force in their brief encounter with Mr. Porter. (*Id.*)

8    Plaintiffs contend that such action violated Mr. Porter's Fourth Amendment rights under to the

9    United States Constitution.

10        Defendants assert that Mr. Porter was not "seized" for purpose of Fourth Amendment

11    analysis. Assuming *arguendo* that Mr. Porter was seized, Defendants assert that Officer Cox is

12    entitled to qualified immunity. Defendant Officers Purnell and Miller should be completely

13    dismissed from the case. The facts establish that Officers Purnell and Miller did not engage in

14    any acts, intentional or otherwise, that caused harm to Mr. Porter, nor did the officers actually

15    use any force upon Mr. Porter.

16    (1)   The Canine Bite Upon an Unconscious Jesse Porter Does Not Constitute A
          Seizure Under Applicable Law

17

18        Plaintiffs allege that Jesse Porter's Constitutional Rights under the Fourth Amendment of

19    the United States Constitution were violated by reason of the bite by Nicky. The complaint sets

20    forth allegations that the canine bite constituted an unreasonable search and seizure through the

21    use of the excessive force. Plaintiffs have not stated any facts establishing that a search of Mr.

22    Porter occurred in this case, and neither the law nor the evidence supports the conclusion that

23    Officer Cox effectuated a seizure of Mr. Porter.

24        The Supreme Court has explained that "a Fourth Amendment seizure does not occur

25    whenever there is a governmentally caused termination of an individual's freedom of movement

26    (the innocent passerby), nor even whenever there is a governmentally caused and

27    governmentally desired termination of an individual's freedom of movement (the fleeing felon),

28    but only when there is a governmental termination of freedom of movement through means

1   intentionally applied." (*County of Sacramento v. Lewis* (1998), 523 U.S. 833, 844.) "[T]he

2   Fourth Amendment addresses 'misuse of power,' ... not the accidental effects of otherwise lawful

3   government conduct." (*Brower v. Inyo County* (1989), 489 U.S. 593, 596.)

4           The test to determine intent is an objective test in which it is "enough for a seizure that a

5   person be stopped by the very instrumentality set in motion or put in place in order to achieve

6   that result." (*Brower*, 489 U.S. at 599.) However, even if a type of "seizure" may occur as a

7   result of an intentional act by a government actor, the seizure or detention itself must be willful

8   on the part of the government actor in order for a violation of the Fourth Amendment to have

9   occurred.  (*Brower*, 489 U.S. at 597.)

10          Ninth Circuit analysis concerning bites from police canines is limited and generally

11  involves the *release* of police canines with the intent to perform a seizure upon criminal

12  suspects: *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994) involved the use of a police dog to seize a

13  criminal suspect in a concealed area.  The suspect fled from police officers into a scrapyard and a

14  perimeter was set up around the scrapyard.   The canine officer unleashed and released his canine

15  into the scrapyard approximately two hours after the suspect fled into the scrapyard in order to

16  apprehend the suspect. *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998) also involved

17  the use of a police dog to seize a criminal suspect in a concealed area.  The burglary suspect

18  triggered the silent alarm at a commercial building.  A perimeter was set up around the building

19  and the canine officer released his canine into the building to seize the suspect.  The officer

20  allowed the dog to bite the suspect for 30 seconds until the suspect showed his hands.

21          *Rogers v. City of Kennewick*, 304 F. Appx.599 (9th Cir. 2008), an unpublished opinion,

22  also involves the release of a police dog to perform a seizure.  Police officers attempted to

23  conduct a traffic stop on a person driving a moped with no lights and no helmets, but the suspect

24  fled into the garage of a home.   Meanwhile, the plaintiff was lawfully sleeping in the backyard

25  of that home when police officers arrived in search of the suspect.  Cover officers arrived,

26  including a police officer with a canine.   The officer unleashed and released the canine, and the

27  dog accessed the back yard and attacked the plaintiff.  The other officers allegedly assaulted the

28  plaintiff with their fists, knees and a flashlight.

1    The *Chew*, *Watkins* and *Rogers* cases are distinguishable from the instant matter. All of

2    these cases involve the release of a police dog with the intention that it pursue and subdue a

3    criminal suspect. Here, Officer Cox was unaware of Mr. Porter's presence in the immediate are

4    and Officer Cox did not intend to seize Mr. Porter.    Furthermore, the lack of intent is

5    demonstrated in that Officer Cox did not give Nicky an apprehend command and did not release

6    Nicky from his leash.

7    Case law supports the position that a Fourth Amendment seizure did not occur in the

8    instant case. In *Dunigan v. Noble*, 390 F.3d 486 (6th Cir. 2004), a police canine bit the plaintiff

9    during the search of plaintiff's home for her son, a parolee at large.   A canine officer brought his

10   police canine into a home with the intent to seize the suspect. The canine was trained to track

11   and the officer maintained the dog on a leash within the home.   The plaintiff stumbled into the

12   canine's defensive perimeter and the dog bit her. The court held that the officer did not seize

13   plaintiff "through means intentionally applied," and thus, plaintiff had no cognizable Fourth

14   Amendment claim.

15   In *Gangstee v. County of Sacramento*, 2010 WL 112650, an unpublished opinion from

16   the United States District Court Eastern District of California, a canine bite of a bystander during

17   a police action. Three sheriff's deputies, including a canine handler, were involved in vehicle

18   pursuit of a criminal suspect. After the suspect's car was stopped using a Pursuit Intervention

19   Technique, the canine officer exited his car and brought out his police canine from his vehicle

20   without a leash. The officer brought the dog out of the car to assist with a possible car extraction

21   of the suspect or an apprehension in case the suspect fled.   The canine got away from the officer

22   and the canine bit the plaintiff.   Plaintiffs argued that by intentionally taking the canine out of

23   the car, the deputy committed an act sufficient to intentionally deploy the canine.   The court

24   disagreed with plaintiff and held in favor of defendants on the issue of seizure.

25   Lastly, in *Dennis v. Town of Loudon*, 2012 WL 4324932 (2012), an unpublished First

26   Circuit opinion, a canine was used to track the scent of a partygoer who had fled into the woods.

27   The officer maintained the dog on a lead, did not release the dog to run free in the woods and

28   commanded the dog to track. The dog located the plaintiff, who was not the object of the search,

1  and bit her.  The court held that where a trained police dog spontaneously attacks an individual,

2  there is no Fourth Amendment seizure.

3      Nothing in the record establishes that Officer Cox intended to seize Mr. Porter.  The

4  instant matter does not involve the release of a police canine or the intent to perform a seizure.

5  Rather, it involves a police officer with a canine on leash tracking an armed and dangerous

6  criminal suspect.  The canine was given a command to track, not apprehend.  The canine was

7  kept on the leash, and not sent untethered to perform a seizure.  Nicky's presence was reasonable

8  and necessary for the track of the suspect.  Thus, under the above authority, there was no intent

9  to deploy the canine to perform a seizure.  This accidental canine bite does not rise to the level of

10  a constitutional violation.

11      Furthermore, Mr. Porter was not conscious during the incident and therefore not

12  constitutionally seized.  Prior to his passing, Mr. Porter himself indicated that he had no

13  recollection of the dog bite.  As a result, Mr. Porter could not perceive any restrain on his liberty.

14      In *Browell v. Davidson*, 595 F.Supp.2d 907, 916 (2009), the court considered whether an

15  unconscious person was seized within the meaning of the Fourth Amendment.  In *Browell*,

16  plaintiff Andrea Browell called 911 when her ex-boyfriend arrived at her home brandishing a

17  gun.  The ex-boyfriend entered the home, shot her son and pulled plaintiff out from underneath

18  her bed where she was hiding.  Mr. Browell then lost consciousness and did not recollect any

19  events until she woke up in the hospital.

20      Police officers and sheriff deputies from two law enforcement agencies responded to the

21  911 call and set up a perimeter around Mr. Browell's home.  During Ms. Browell's bout of

22  unconsciousness, the ex-boyfriend placed her in a vehicle and backed the vehicle out of the

23  garage.  A police officer pointed his gun at the ex-boyfriend and ordered him to stop.  Instead,

24  the ex-boyfriend drove the vehicle towards the officers and the officers fired at the vehicle.

25  Some of the gunshots struck Mr. Browell as she sat unconscious in the passenger seat of the

26  vehicle.

27      Ms. Browell brought a Section 1983 action against various police officers and county

28  sheriff deputies.  The court ruled that Ms. Browell was not seized within the meaning of the

1   Fourth Amendment.  The court stated "[plaintiff] was not even aware of the police being present,

2   and she was surely not aware of her inability to leave.  Thus, [plaintiff] could not perceive any

3   restraint on her liberty or otherwise feel compelled to submit to a governmental show of force…

4   Therefore, [plaintiff] was not seized under the Fourth Amendment."

5          Similarly here, Mr. Porter did not perceive any restraint on his liberty   The testimony of

6   Officer Cox supports that Mr. Porter was unconscious at the time of the accident. Mr. Porter did

7   not make any sound when bit.  It would be a superhuman feat not to make a sound when bit by a

8   dog.  In fact, such a proposition is counter to logic and the human experience.  Furthermore, Mr.

9   Porter admits that he did not know he was bit by a dog until he woke up in the hospital.  These

10  facts conclusively demonstrate that Mr. Porter was not conscious at the time of the incident and

11  hence, was not aware of his restricted liberty of movement.   Consequently, Section 1983

12  liability does not attach to Officer Cox.

13        (2)    The Canine Bite Upon an Unconscious Jesse Porter Does Not Constitute
14               Excessive Force Under Applicable Law and the Individual Police Officers are
15               Entitled to Qualified Immunity

16         Plaintiffs also contend that Jesse Porter was subjected to excessive force by Defendants

17  in violation of his Constitutional Rights under the Fourth Amendment.  However, a seizure under

18  the Fourth Amendment must have occurred before an excessive force claim is cognizable under

19  the Fourth Amendment. (*County of Sacramento*, 523 U.S. at 844-845.)  Furthermore, Officer

20  Cox is entitled to qualified immunity for his actions.

21         Qualified immunity is "an entitlement not to stand trial or face the other burdens of

22  litigation." (*Mitchell v. Forsyth* (1985), 472 U.S. 511, 526.)  The privilege is "an immunity from

23  suit rather than a mere defense to liability." (*Id.*)  The defense of qualified immunity protects

24  "government officials performing discretionary functions from liability for civil damages insofar

25  as their conduct does not violate clearly established statutory or constitutional rights of which a

26  reasonable person would have known." (*Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818.)  The

27  doctrine protects a police officer from federal civil rights liability if a reasonable officer could

28  have believed that his actions were constitutional, even if they were not. (*Harlow*, 457 U.S. at

815.)  The appropriate inquiry is whether the officers acted reasonably, not whether they had less

intrusive alternatives available to them...Requiring officers to find and choose the least intrusive

alternative would require them to exercise superhuman judgment.  (*Scott v. Henrich* (9th

Cir.1994), 39 F.3d 912, 915.)  The protection applies regardless of whether the government

official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of

law and fact."  (*Groh v. Ramirez* (2004), 540 U.S. 551, 567.)

The rule of qualified immunity "provides ample support to all but the plainly incompetent

or those who knowingly violate the law."  (*Burns v. Reed* (1191), 500 U.S. 478, 494-95.)

"Therefore, regardless of whether the constitutional violation occurred, the [official] should

prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could

have reasonably believed his particular conduct was lawful."  (*Romero v. Kitsap County* (9th Cir.

1991), 931 F.2d 624, 627.)  In other words, even if defendant Officer Cox did not have legal,

lawful authority to deploy his canines on a search of a fleeing armed suspect (a fact that

defendants do not concede), defendants contend Officer Cox is still entitled to qualified

immunity.

A defendant moving for summary judgment based on assertion of absolute or qualified

immunity can support its motion by relying solely on the pleadings, i.e., defendant is not

required to put forth any evidence to establish such immunity.  The pleading alone is sufficient to

shift the burden to plaintiff to show that defendant is not entitled to immunity.  (*Beck v. Texas

State Bd. of Dental Examiners* (5th Cir. 2000), 204 F.3d 629, 633-634.)

To defeat a public official's motion for summary judgment based on qualified immunity,

plaintiff must show the official's conduct was plainly unlawful when it occurred. This requires

evidence showing no reasonable person in defendant's position could have thought the facts

justified the action taken, i.e., that the official knew or should have known (objective test) that

his or her conduct violated plaintiff's constitutional rights. (*Crawford-El v. Britton* (1998), 523

U.S. 574.)

Qualified immunity involves a stringent two step inquiry which plaintiff must overcome.

1   In *Saucier v. Katz*, 533 U.S. 194, the United States Supreme Court mandated a two-step analysis

2   for resolving government officials' qualified immunity claims.  First, a court must answer the

3   question: based upon the facts taken in the light most favorable to the party asserting the injury,

4   did the officer's conduct violate a constitutional right? (*Saucier*, 533 U.S., at 201.)  Second, if a

5   constitutional violation occurred, then a court must decide whether the officer could nevertheless

6   have reasonably but mistakenly believed that his or her conduct did not violate a clearly

7   established constitutional right. (*Id.*)  Qualified immunity is applicable unless the official's

8   conduct violated a clearly established constitutional right. (*Anderson*, 483 U.S., at 640.)  If

9   plaintiffs fail to satisfy either element, judgment must be granted in favor of defendant.

10          To qualify as a clearly established right, the contours of the right must be sufficiently

11   clear that a reasonable official would understand that what he is doing violates that right.

12   (*Anderson v. Creighton* (1987) ,483 U.S. 635, 640.)  In this regard, the Supreme Court has

13   cautioned against interpreting clearly established law too generally for fear of allowing plaintiffs'

14   to convert the rule of qualified immunity into the rule of virtually unqualified liability simply by

15   alleging violation of extremely abstract rights." (*Anderson,* 483 U.S. at 639.)

16          In light of applicable qualified immunity analysis, defendants contend that Officer Cox

17   did not violate clearly established law in his search for a dangerous and armed criminal suspect.

18   Officer Cox was concerned about locating the armed suspect before the suspect could injure a

19   member of the public or police officers with a firearm.  Officer Cox maintained Nicky on leash

20   throughout the search and did not release his dog to perform an apprehension.  Although the bite

21   is unfortunate, Officer Cox's actions do not violate clearly established law.

22

**B.**     **SECOND CAUSE OF ACTION – 42 U.S.C. SECTION 1983:**
23          **CITY OF HAYWARD AND FORMER POLICE CHIEF RON ACE**

24      (1)    Former Police Chief Ron Ace in his Official Capacity

25          Plaintiffs' complaint names as defendants the City of Hayward and former Police Chief

26   Ron Ace, in his official capacity.  Plaintiffs' complaint is defective as it names former Police

27   Chief Ron Ace in his official capacity as well as the City of Hayward. (*Complaint*, at paras. 10,

28   37.)  Suits against a municipal officer in the officer's official capacity are tantamount to suits

1    against the entity itself.  As the City of Hayward is already named in this suit, the inclusion of

2    former Police Chief Ron Ace is redundant, unnecessary, and harassing.  Defendants therefore

3    request that former Police Chief Ron Ace be struck from the complaint.

4           Official-capacity suits "generally represent only another way of pleading an action

5    against an entity of which an officer is an agent." (*Monell*, 436 U.S. at 690, n. 55.)  "As long as

6    the government entity receives notice and an opportunity to respond, an official-capacity suit is,

7    in all respects other than name, to be treated as a suit against the entity." (*Brandon v. Holt*

8    (1985), 469 U.S. 464, 471-472.)   The Supreme Court has stated "[t]here is no longer a need to

9    bring official-capacity actions against local government officials, for under *Monell*, supra, local

10   government units can be sued directly for damages and injunctive or declaratory relief."

11   (*Kentucky. v. Graham* (1985), 473 U.S. 159, 167, n.14.)  Pursuant to the above-cited authority,

12   former Police Chief Ron Ace should be dismissed from this action.  The inclusion of former

13   Police Chief Ron Ace is immaterial and inappropriate in light of applicable law.

14          (2)     Policy, Custom, Practice

15          Plaintiffs allege that the policies, customs and practices of the City of Hayward were the

16   moving force behind the alleged violations of Mr. Porter's constitutional rights.  Plaintiffs allege,

17   in general fashion, that defendants have a policy of allowing the improper use of police dogs.

18   (*Complaint*, at para. 37.)  Defendants assert that because Mr. Porter was not "seized" for purpose

19   of Fourth Amendment analysis, the City of Hayward cannot be liable pursuant to a *Monell* claim.

20   Furthermore, the applicable policies of the City of Hayward prohibit the use of excessive force.

21          A plaintiff alleging municipal liability for civil rights violations must prove three

22   elements: (1) a violation of his or her constitutional rights, (2) the existence of a municipal policy

23   or custom, and (3) a causal nexus between the policy or custom and the constitutional violation.

24   (*Monell v. New York City Dept. of Social Services* (1978), 436 U.S. 658, 691.)  A plaintiff must

25   show that the municipality acted with the requisite degree of culpability, and must demonstrate a

26   direct casual link between the municipal action and the deprivation of federal rights.  (*Bd. of*

27   *County Comm'rs of Bryan County v. Brown* (1997), 520 U.S. 397, 404.)  In other words, the

28   municipality's actions must be the "moving force" behind the rights deprivation.  (*Id.*)  On the

1   other hand, Section 1983 liability cannot be vicarious or premised on respondeat superior. (*Polk*

2   *County v. Dodson* (1981), 454 U.S. 312, 325; *Monell*, supra, 436 U.S. at 690-694.)

3        The existence of a municipal policy alone is insufficient to establish *Monell* liability. A

4   plaintiff must also show the conduct of the policy or decision makers, or the policy itself, must

5   have resulted from a "deliberate indifference" to the rights of the plaintiff. (*City of Canton v.*

6   *Harris* (1989), 489 U.S. 378, 389.)  When the need for more or different action "is so obvious,

7   and the inadequacy [of the current procedure] so likely to result in the violation of constitutional

8   rights," then the policymakers can reasonably be said to have been deliberately indifferent to the

9   rights of the plaintiff. (*Oviatt By and Through Waugh v. Pearce* (1992), 954 F.2d 1470, 1477-

10  1478.)

11       Plaintiffs have the burden of proof.  Plaintiffs must set forth facts that the City of

12  Hayward maintains a policy that expressly authorizes unconstitutional police dog attacks and that

13  defendants demonstrated a deliberate indifference to Mr. Porter's constitutional rights.  Plaintiffs

14  complaint itself provides nothing more than conclusions of law.

15       At the time of the incident at issue, the Hayward Police Department maintained a policy

16  that addressed the use of police canines.  (Declaration of Lauren Sugayan (hereafter "Sugayan

17  Declaration"), para. 3; Exhibit A.)  The also Hayward Police Department maintained a policy

18  that addressed the use of force. (Sugayan Declaration, para. 4; Exhibit B.)  The Hayward Police

19  Department's policy on the Use of Force specifically states that only reasonable force is

20  permitted and provides those factors articulated in the *Graham* decision.

21       The issue on summary judgment for a *Monell* claim is whether there is any evidence that

22  the City of Hayward's policy, as a matter of law, cause the alleged unreasonable use of force

23  against Mr. Porter.  Assuming arguendo, the existence of an unconstitutional policies, practices

24  or customs of the Hayward Police Department, the accidental bite to Mr. Porter did not result

25  from said policies, practices or customs.  Officer Cox was unaware of Mr. Porter's presence on

26  the date of the incident and he did not command Nicky to perform an apprehension.   The only

27  command given to a leashed Nicky was to "track."  The policies, practices and customs of the

28  police department were not the cause of any constitutional violation.

1    The actions of Officer Cox do not demonstrate a deliberate indifference to Mr. Porter's

2    constitutional rights.  Between 2009-2012, Officer Cox and canine Nicky responded to

3    approximately 3,100 calls for service and only three incidents involved an accidental bite prior to

4    Mr. Porter. (Cox Declaration, para. 9.)  Two of those incidents involved other law enforcement

5    officers, not a bystander. (*Id.*)  There have been no accidental bites after Mr. Porter. (*Id.*)

6         (3)    Failure to Train, Supervise, Control

7         Plaintiffs allege that the City of Hayward failed to properly train Officer Cox regarding

8    the proper use of police dogs.  Plaintiffs also name former Police Chief Ron Ace in his official

9    capacity and allege a failure to supervise.  Defendants assert that Officer Cox received the

10   required training of a law enforcement officer canine handler.  Furthermore, defendants assert

11   that former Police Chief Ron Ace did not commit any acts that would subject him to Section

12   1983 liability.

13        A local government entity's failure to train its employees can serve as a basis to establish

14   municipal liability where the failure to train "amounts to deliberate indifference to the rights of

15   the persons" with whom those employees are likely to come into contact. (*Lee v. City of Los*

16   *Angeles* (9th Cir. 2001), 250 F.3d 668, 681.)  A failure to train claim requires plaintiff to show

17   that (1) the training program was inadequate; (2) the inadequate training amounted to deliberate

18   indifference to the rights of the persons with whom the insufficiently trained employees came

19   into contact; and (3) the inadequate training actually caused the deprivation of plaintiff's

20   constitutional rights. (*Merritt v. County of Los Angeles* (9th Cir. 1989), 875 F. 2d 765, 770.)

21   Evidence of mistakes made by adequately trained employees or the occurrence of a single

22   incident of unconstitutional action by a non-policy-making employee is not sufficient to show

23   the existence of a custom or policy that violates constitutional rights. (*Thompson v. City of Los*

24   *Angeles* (9th Cir. 1989), 885 F.2d 1439, 1444; *City of Canton v. Harris* (1989), 109 S.Ct. 1197,

25   1203.

26        The record reflects that Officer Cox received the necessary training required of a law

27   enforcement officer and canine handler.  At the time of the incident, Officer Cox had received

28   approximately 312 hours of formal trainings and certifications with Nicky. (Cox Declaration,

1   para. 5.)   Officer Cox and Nicky have continued to train since the incident date, including the

2   completion of an additional 148 hours of formal training and certifications.   (Cox Declaration,

3   para. 6, 8.)  Officer Cox and Nicky passed yearly evaluations by an independent evaluator.  (Cox

4   Declaration, para. 7.)   Officer Cox and Nicky participated in weekly departmental canine

5   trainings to practice the skills necessary for police canine work. (Cox Declaration, para. 8.)

6   Officer Cox was adequately trained and there is no need to train a canine officer not to accidently

7   allow his canine to bite a bystander.

8        Furthermore, there is no evidence that former Police Chief Ron Ace committed any act

9   in his individual capacity to be liable pursuant to a theory of Section 1983 supervisor liability

10   under the Fourth Amendment for excessive force.  Aside from the caption in the complaint,

11   plaintiffs do not indicate they are pursuing a claim against former Police Chief Ron Ace in his

12   individual capacity.  Even if plaintiffs were pursuing such a claim, there is no evidence that

13   former Police Chief Ron Ace is personally liable for any conduct.

14        To establish supervisory liability for excessive force against former Police Chief Ron

15   Ace, in his individual capacity, plaintiffs must show (1) "culpable action or inaction in the

16   training, supervision, or control of his subordinates" for which he "acquiesce[d] in the

17   constitutional deprivations of which [the] complaint is made," or (2) that he showed a "reckless

18   or callous indifference to the rights of others."  (*Clay v. Conlee* (8th Cir.1987), 815 F.2d 1164,

19   1170; *Meade v. Grubbs* (10th Cir.1988), 841 F.2d 1512, 1528.)  A supervisor can be held liable

20   for excessive force under the Fourth Amendment if he or she was personally involved in

21   depriving a plaintiff of constitutional rights, or if there is sufficient causal connection between

22   the wrongful conduct of the supervisor and the violation of the constitutional right.  (*Redman v.*

23   *County of San Diego* (9th Cir. 1991), 942 F. 2d 1435, 1446.)

24        The record reflects that Officer Cox was appropriately trained to handle a police canine

25   and the applicable City policies prohibited the excessive use of force.  Moreover, a reasonable

26   supervisor would not know that a failure to specifically train Officer Loring Cox not to place an

27   unconscious innocent bystander at risk of contact.   There is no evidence that former Police Chief

28   Ron Ace inadequately trained Officer Cox and he is entitled to qualified immunity.

C.    **THIRD CAUSE OF ACTION – 42 U.S.C. SECTION 1983:
      FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM
      AGAINST ALL DEFENDANTS**

Plaintiffs have nominally alleged that all of the defendants violated plaintiffs' Fourteenth Amendment substantive due process rights. Plaintiffs do not identify each defendant, nor do plaintiffs allege facts or law linking the specifically named defendants to the alleged Fourteenth Amendment violation. Therefore, Plaintiffs' second claim for relief does not state a claim based upon the Fourteenth Amendment claim against any specific defendant.

Official conduct that "shocks the conscience" in depriving parents of that interest is cognizable as a violation of due process. (*Porter v. Osborn* (9th Cir.2008), 546 F.3d 1131.)  The Ninth Circuit treats the "shocks the conscience" test as one involving a spectrum between "a purpose to harm" standard and a "deliberate indifference" standard. (*Porter*, 546 F.3d at 1137.) The Court in *Wilkinson v. Torres* (9th Cir.2010), 610 F.3d 546, 554, provided:

> In determining whether excessive force shocks the conscience, the first inquiry is whether the circumstances are such that actual deliberation [by the officer] is practical. Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience. On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. (citations and internal quotation marks omitted).

Where, as here with Officer Cox, an officer faces "fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply." (*Porter*, 546 F.3d at 1139.) Such circumstances require officers to make "repeated split-second decisions about how best to apprehend [a] fleeing suspect in a manner that will minimize risk to their own safety and the safety of the general public." (*Bingue v. Prunchak* (9th Cir.2008), 512 F.3d 1169, 1176.) Consequently, the more stringent "purpose to harm" standard applies to the facts of this case. Applying this standard, no evidence shows that Officer Cox had a purpose to harm Mr. Porter apart from legitimate law enforcement objectives. The Porter court noted that "'deliberation" should not be interpreted in the narrow, technical sense, reasoning that the Supreme Court had rejected the deliberate indifference standard even in cases where an officer

1  giving chase could have deliberated while pursuing the suspect." (*Wilkinson*, 610 F.3d at 554,

2  citing to *Porter v. Osborn*, 546 F.3d at 1139-1140.)  Actual deliberation was not practical in this

3  circumstance, during a track of an armed robbery suspect and an accidental bite to an

4  unconscious person, and there is no evidence of any intent by Officer Cox to interfere with the

5  familial relationship between Mr. Porter and plaintiffs.  Furthermore, Officer Cox is entitled to

6  qualified immunity on plaintiffs' Fourteenth Amendment claim.  There was no clearly

7  established law that would have plainly indicated that his conduct would violate plaintiffs'

8  Fourteenth Amendment right of familial association.   Plaintiffs have also not set forth how the

9  City of Hayward or former Police Chief Ron Ace, in his individual capacity, interfered with

10  plaintiffs' due process rights.  Officers Purnell and Miller are entitled to summary judgment on

11  plaintiffs' Fourteenth Amendment claim.

### D.    FOURTH CAUSE OF ACTION – CALIFORNIA CIVIL CODE SECTION 3342(C): ALL DEFENDANTS

15          Defendants former Police Chief Ron Ace, Police Officers Cox, Purnell and Miller move

16  for summary judgment on plaintiffs' fourth cause of action based on California Civil Code

17  Section 3342(c).   To establish liability, Section 3342 requires plaintiffs to prove that: (a)

18  defendant owned the dog; (b) the canine bit a person while in a public place or lawfully on

19  private property; (c) the person was harmed; and (d) defendant's dog was a substantial factor in

20  causing the person's harm.  The City of Hayward is the owner of canine Nicky.  The remaining

21  defendants are not owners and the fourth cause of action against them must be dismissed.

### E.    FIFTH CAUSE OF ACTION – GENERAL NEGLIGENCE CALIFORNIA GOVERNMENT CODE § 815.2: ALL DEFENDANTS

25          Plaintiffs allege that defendants are liable under a negligence theory pursuant to

26  California Government Code § 815.2(a). Section 815.2(a) provides "A public entity is liable for

27  injury proximately caused by an act or omission of an employee of the public entity within the

28  scope of his employment if the act or omission would, apart from this section, have given rise to

1  a cause of action against that employee or his personal representative." Therefore, Section

2  815.2(a) ascribes liability to a *public entity* for injury caused by its employees. However, where

3  the employee is immune from liability, the public entity cannot be held liable for injuries

4  resulting from the acts or omissions of its employee. (Government Code § 815.2(b).

5      (1)     Police Officers Robert Purnell and Officer Michael Miller

6          Defendants Police Officer Purnell and Miller move for summary judgment on plaintiffs'

7  fifth cause of action based on California Government Code Section 815.2(a). Officer Purnell and

8  Officer Miller did not engage in any acts that caused harm to Mr. Porter, nor did the officers use

9  any force upon Mr. Porter. Officer Purnell and Officer Miller are also immune from liability

10 pursuant to California Government Code § 820.4 and 820.8. Section 820.4 provides a "public

11 employee is not liable for his act or omission, exercising due care, in the execution or

12 enforcement of any law." Section 820.8 provides "[e]xcept as otherwise provided by statute, a

13 public employee is not liable for an injury caused by the act or omission of another person."

14 Therefore, plaintiffs' fifth cause of action against Officer Purnell and Officer Miller should be

15 dismissed.

16     (2)     The City of Hayward and former Police Chief Ron Ace

17         Defendants City of Hayward and former Police Chief Ron Ace also move for summary

18 judgment on plaintiffs' fifth cause of action based on California Government Code Section

19 815.2(a). As indicate above, Officer Cox is properly trained as a canine handler. At the time of

20 the incident, Officer Cox had received approximately 312 hours of formal trainings and

21 certifications with Nicky. (Cox Declaration, para. 5.)  Officer Cox and Nicky have continued to

22 rigorously train since the incident date.  (Cox Declaration, para. 6, 8.)  Officer Cox and Nicky

23 passed yearly evaluations by an independent evaluator. (Cox Declaration, para. 7.)  Officer Cox

24 and Nicky participated in weekly departmental canine trainings to practice the skills necessary

25 for police canine work. (Cox Declaration, para. 8.) The record is clear that the Hayward Police

26 Department supported the training needs and requirements of its canine handler.   Furthermore,

27 there is no evidence that former Police Chief Ron Ace inadequately trained Officer Cox and was

28 deliberately indifferent to Officer Cox's training needs following any incidents.

**F.     SIXTH CAUSE OF ACTION – ASSAULT AND BATTERY:
        ALL DEFENDANTS**

Plaintiffs sixth cause of action alleges a claim of assault and battery against the City of Hayward, former Police Chief Ron Ace, and Officers Cox, Purnell and Miller.  A battery is any intentional, unlawful and harmful contact by one person with the person of another.  To establish a claim of battery under California law, a plaintiff must prove that: (1) the defendant touched the plaintiff with the intent to harm or offend him; (2) the plaintiff did not consent to the touching; and (3) the plaintiff was harmed or offended by the defendant's conduct.  (*Boyd v. City of Oakland* (2006), 458 F.Supp.2d 1015, 1051–1052.)  Where a police officer is the defendant, the plaintiff must also prove unreasonable force as an additional element of these claims.  (*Edson v. City of Anaheim* (1998), 63 Cal.App.4th 1269, 1272.)

Here, plaintiffs fail to establish that Officer Cox had the necessary intent prior to Nicky making contacting with Mr. Porter.  Rather, the evidence demonstrates that Officer Cox was unaware of Mr. Porter's presence while he conducted a suspect track with Nicky.  Furthermore, Officer Cox did not release Nicky, nor did he order Nicky to perform an apprehension.  As Officer Cox did not commit a battery against Mr. Porter, the City of Hayward and former Police Chief Ron Ace cannot be held liable for assault and battery.  Lastly, there is no evidence that Officers Purnell and Miller used any unreasonable force against Mr. Porter.   Therefore, plaintiffs' sixth cause of action against all defendants should be dismissed.

**F.     SEVENTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF
        EMOTIONAL DISTRESS: ALL DEFENDANTS**

Plaintiffs seventh cause of action alleges a claim of intentional infliction of emotional distress ("IIED") against the City of Hayward, former Police Chief Ron Ace, and Officers Cox, Purnell and Miller.  The elements of a claim of IIED are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."

1  (*Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209.)  To be considered outrageous, the

2  conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized

3  community." (*Id.*)  "The defendant must have engaged in 'conduct intended to inflict injury or

4  engaged in with the realization that injury will result.'" (*Christensen v. Superior Court* (1991) 54

5  Cal.3d 868, 903.)

6       Similar to the claim for assault and battery, plaintiffs have failed to establish that Officer

7  Cox had the necessary intent to satisfy the elements of a claim of IIED.  There is no evidence

8  that Officer Cox demonstrated extreme and outrageous conduct with the intent of causing

9  emotional distress.  Officer Cox was in the process of continuing a track of a dangerous armed

10  suspect when his canine Nicky made accidental contact with an unconscious Jesse Porter.

11  Officer Cox did not release Nicky, nor did he order Nicky to perform an apprehension.  As

12  Officer Cox did not commit an IIED against Mr. Porter, the City of Hayward and former Police

13  Chief Ron Ace cannot be held liable for such a claim.  Lastly, there is no evidence that Officers

14  Purnell and Miller used any unreasonable force against Mr. Porter.  Therefore, plaintiffs'

15  seventh cause of action against all defendants should be dismissed.

16

17  **F.     EIGHTH CAUSE OF ACTION – CALIFORNIA CIVIL CODE
   SECTION 52.1: ALL DEFENDANTS**

18

19       Plaintiffs allege violation of Civil Code section 52.1 by all defendants.  Section 52.1, also

20  known as the Bane Act, prohibits a person from interfering or attempting to interfere "by threats,

21  intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of

22  rights secured by the Constitution or laws of the United States, or of the rights secured by the

23  Constitution or laws of this state." Cal. Civil Code § 52.1(a). "The essence of a Bane Act claim is

24  that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'),

25  tried to or did prevent the plaintiff from doing something he or she had the right to do under the

26  law or to force the plaintiff to do something that he or she was not required to do under the law."

27  (*Austin B. v. Escondido Union Sch. Dist.* (2007), 149 Cal.App. 4th 860, 883.) To succeed on a

28  claim under this section, plaintiffs must prove that each defendant (1) interfered with the

1   plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) the

2   plaintiff reasonably believed that such acts would be committed; (3) that the defendant injured

3   plaintiff to prevent him from exercising his constitutional or statutory right or to retaliate against

4   him for having exercised this right; (4) that plaintiff was harmed; (5) and that defendant's

5   conduct was a substantial factor in causing this harm. Id. In general, "[a] defendant is liable if he

6   or she interfered with or attempted to interfere with the plaintiff's constitutional rights by the

7   requisite threats, intimidation, or coercion." (*Shoyoye v. County of Los Angeles* (2012), 203

8   Cal.App. 4th 947, 956.)

9          The Banes Act is not applicable to the incident in question based upon the facts.  Officer

10  Cox was unaware of Mr. Porter's presence prior to contact with Nicky and he did not threaten,

11  intimidate or coerce Mr. Porter.  In fact, Mr. Porter was not conscious to experience anything,

12  much less have any reasonable beliefs about what would happen.  Furthermore, Officer Cox did

13  not injure Mr. Porter in an attempt to prevent him from exercising any right or in retaliation for

14  Mr. Porter exercising a right.   The remaining defendants are also entitled to summary judgment

15  due to the inapplicability of the Banes Act.

### G.   NINTH CAUSE OF ACTION – WRONGFUL DEATH: ALL DEFENDANTS

18         Plaintiff Jonathan Portero-Brown lacks standing to pursue a wrongful death action.  The

19  California Code of Civil Procedure Section 377.60 provides:

> "A cause of action for the death of a person caused by the wrongful act or neglect of
> another may be asserted by any of the following persons ...: "(a) The decedent's surviving
> spouse, domestic partner, children, and issue of deceased children, or, if there is no
> surviving issue of the decedent, the persons, including the surviving spouse or domestic
> partner, who would be entitled to the property of the decedent by intestate succession."

24  Applied here, plaintiff Jonathan Portero-Brown lacks standing to pursue a wrongful death action.

25  Mr. Portero-Brown is not the biological son of decedent Jesse Porter. (Deposition of Jonathan

26  Portero-Brown "Depo. Portero-Brown"), pg.12.)  He was never adopted by Mr. Porter, nor was

27  he depending financially upon Mr. Porter. (Depo. Portero-Brown"), pg.14, 19.)  Accordingly,

28  Mr. Portero-Brown lacks standing to pursue the instant action.

### G.    PUNITIVE DAMAGES

Plaintiffs have requested that punitive damages be assessed against the individually named defendants.  Plaintiffs must establish that any act committed by each defendant was intentional and intended by each defendant to cause harm to Mr. Porter, or that each defendant's actions were the result of oppression, fraud or malice. Cal.Civ.Code §3294.  A Section 1983 punitive damage request requires plaintiff to show that each defendant's conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." (*Smith v. Wade* (1983), 461 U.S. 30, 56.)   There is no evidence of evil motive or intent to cause harm, reckless indifference to plaintiffs' rights or gross negligence. Officer Cox did not act with malice, fraud or oppression in his encounter with an unconscious Mr. Porter.  He followed Mr. Porter to the hospital, check in on him twice and apologized to Mr. Porter for the accident.  This incident was certainly unfortunate, but an accident that lacks the elements warranting punitive damages.

### V.    CONCLUSION

The facts of this case demonstrate that this is not a Civil Rights lawsuit.  Rather, the facts demonstrate that this case should be prosecuted under state law theories pursuant to the California Government Code, Section 815.2 and California Civil Code, Section 3342.  Civil Code Section 3342 was enacted to address circumstances such as the instant matter, where a law enforcement canine causes an injury to a bystander.  Accordingly, defendants respectfully request that the Court grant their motion for summary adjudication as to plaintiffs' FIRST, SECOND, THIRD, SIXTH, SEVENTH, EIGHTH, AND NINTH causes of action.

DATED: April 24, 2013               MICHAEL S. LAWSON, City Attorney

By:      /s/  Rafael E. Alvarado Jr.
         Rafael E. Alvarado Jr., Assistant City Attorney
         Attorneys for Defendant CITY OF HAYWARD