1   MICHAEL S. LAWSON (SBN 048172)
    City Attorney
2   RAFAEL E. ALVARADO JR. (SBN 247904)
    Assistant City Attorney
3   MICHAEL VIGILIA (SBN 228353)
    Assistant City Attorney
4   JOSEPH BRICK (SBN 253132)
    Deputy City Attorney
5   CITY OF HAYWARD
    777 B Street, 4th Floor
6   Hayward, CA 94541-5007
    Tel: (510) 583-4450
7   Fax: (510) 583-3660

8   Attorneys for Defendant City of Hayward,
    Former Police Chief Ron Ace, Officers Loring Cox,
9   Michael Miller and Robert Purnell

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13

14   CHINA McKAY AND JONATHAN            Case No. CV 12-1613 (NC)
15   PORTERO-BROWN, INDIVIDUALLY AND
     AS SUCCESSORS-IN-INTEREST TO THE
16   ESTATE of JESSE PORTER; and JESSE   DECLARATION OF LAUREN SUGAYAN
     PORTER JR., INDIVIDUALLY, AS         IN SUPPORT OF DEFENDANTS' MOTION
17   SUCCESSOR-IN-INTEREST TO THE         FOR SUMMARY JUDGMENT, OR IN THE
     ESTATE OF JESSE PORTER, AND AS       ALTERNATIVE FOR SUMMARY
18   PERSONAL REPRESENTATIVE OF THE       ADJUDICATION OF CLAIMS,
     ESTATE OF JESSE PORTER,
19
20            Plaintiffs,
21   v.
22   CITY OF HAYWARD, FORMER HAYWARD
     POLICE CHIEF RON ACE, IN HIS
23   INDIVIDUAL AND OFFICAL CAPACITIES,
     HAYWARD POLICE OFFICERS LORING
24   COX, MICHAEL MILLER and ROBERT
     PURNELL, and DOES ONE through TWENTY
25   FIVE, inclusive,
26            Defendants.
27
28

I, Lauren Sugayan, declare as follows:

1.      I am employed by the City of Hayward as a Police Program Analyst for the Hayward Police Department.

2.      As a Police Program Analyst, I am a duly authorized custodian of records and have authority to authenticate such records, including those records attached as exhibits to this declaration.

3.      Attached as Exhibit A is a true and correct copy of "Policy 318: Canine Program" for the Hayward Police Department, in effect on May 29, 2011.

4.      Attached as Exhibit B is a true and correct copy of "Policy 300: Use of Force" for the Hayward Police Department, in effect on May 29, 2011.

5.      These records and documents were prepared by the personnel of the Hayward Police Department and maintained in the ordinary course of business.

I declare under penalty of perjury under the laws of the United States and the laws of the state of California that the foregoing is true and correct.

Executed this 24th day of April, 2013, in Hayward, California.

*Lauren Sugayan*

LAUREN SUGAYAN

McKay et al. v. City of Hayward, et al.
USDC Case No. CV 12-1613                    -2-

Declaration of Lauren Sugayan In Support
of Defendants' Motion for Summary Judgment

Exhibit <u>A</u>

**Hayward Police Department**
Policy Manual

# Canine Program

## 318.1   PURPOSE AND SCOPE

The Canine Program was established to augment police services to the community. Highly skilled and trained teams of handlers and canines have evolved from the program and are used to supplement police operations to locate individuals, contraband and to apprehend criminal offenders.

### 318.1.1   ACCREDITATION STANDARDS

This section pertains to the following CALEA Standards: 1.3.5, 1.3.6, 41.1.4

## 318.2   GUIDELINES FOR THE USE OF CANINES

A canine may be used to locate and apprehend a suspect if the canine handler reasonably believes that the individual has either committed or threatened to commit any serious offense and if any of the following conditions exist:

(a)   There is a reasonable belief that the individual poses an imminent threat of violence or serious harm to the public, any officer, or the handler.

(b)   The individual is physically resisting or threatening to resist arrest and the use of a canine reasonably appears to be necessary to overcome such resistance.

(c)   The individual(s) is/are believed to be concealed in an area where entry by other than the canine would pose a threat to the safety of officers or the public.

It is recognized that situations may arise that do not fall within the provisions set forth in this policy. In any such case, a standard of objective reasonableness shall be used to review the decision to use a canine in view of the totality of the circumstances.

Absent reasonable belief that an individual has committed or threatened to commit a serious offense, mere flight from pursuing officer(s) shall not serve as good cause for the use of a canine to apprehend the individual.

Once the individual has been located and no longer reasonably appears to represent a threat or risk of escape, the canine should be placed in a down-stay or otherwise secured as soon as it becomes reasonably practical.

### 318.2.1   PREPARATION FOR UTILIZING A POLICE SERVICE DOG

Prior to the use of a canine to search for or apprehend any individual, the canine handler and/or the supervisor on-scene shall carefully consider all pertinent information that is reasonably available at the time. The information should include, but is not limited to the following:

(a)   The individual's age or estimate thereof.

(b)   The nature of the suspected offense.

(c)   Any potential danger to the public and/or other officers at the scene if the canine is released.

(d)   The degree of resistance or threatened resistance, if any, the subject has shown.

(e)   The potential for escape or flight if the police dog is not utilized.

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Canine Program*

(f)   The potential for injury to officers or the public caused by the suspect if the canine is not utilized.

As circumstances permit, the canine handler should make every reasonable effort to communicate and coordinate with other involved personnel to minimize the risk of unintended injury.

A canine handler shall have the ultimate authority not to deploy the dog. The handler will evaluate each situation and determine if the use of a canine is technically feasible. Generally, the decision whether to deploy the dog shall remain with the handler. However, a supervisor sufficiently apprised of the situation may decide not to deploy the dog.

### 318.2.2   WARNINGS GIVEN TO ANNOUNCE THE USE OF A POLICE SERVICE DOG
Unless it would otherwise increase the risk of injury or escape, a clearly audible warning to announce that a police service dog will be released if the person does not come forth, shall be made prior to releasing a police service dog. The police service dog handler, when practical, shall first advise the supervisor of their decision if a verbal warning is not given prior to releasing the police service dog. In the event of an apprehension, the handler shall document in any related report whether or not a verbal warning was given and, if none was given, the reasons why.

### 318.2.3   GUIDELINES FOR NON-APPREHENSION USE
Because canines have senses far superior to those of humans, they may often be effectively utilized to track or search for non-criminals (e.g. lost children, individuals who may be disoriented or in need of medical attention) or even suspects wanted for minor criminal offenses. In such circumstances, it will be necessary for the handler to evaluate the conditions and ability of the canine to determine the feasibility of such an application.

(a)   Absent a change in circumstances that present an immediate threat to officers, the canine or the public, such applications should be conducted on leash or under such conditions that will minimize the likelihood that the canine will bite or otherwise injure the individual.

(b)   Throughout the deployment of the canine in such circumstances, the handler should consider issuing periodic verbal assurances that the canine will not bite or hurt the person.

(c)   Unless otherwise directed by a supervisor, assisting personnel should take direction from the handler in order to minimize interference with the canine.

### 318.2.4   REPORTING CANINE USE, BITES AND INJURIES
Whenever the police service dog is deployed, a police report shall be completed by the handler and turned in to the Canine Unit Supervisor and forwarded to the Canine Unit Manager before going off duty.

Whenever the use of the canine results in a bite or any injury, a detailed police report of the circumstances shall be completed before going off duty.

The injured party should be transported to an appropriate medical facility if the injury requires medical attention beyond first aid. If the injured party is in custody an officer should remain with the suspect until treatment has been rendered.

Photographs shall be taken of the bite or injury as soon as practicable after tending to the immediate needs of the injured party. Photographs shall be retained as evidence in

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department

Policy Manual

accordance with current Department evidence procedures. It shall be the responsibility of the Canine Unit Supervisor to ensure that such photographs are retained until the potential need for use in any related civil proceeding has expired.

If a subject alleges an injury that is not visible, a supervisor shall be notified and the location of the alleged injury should be photographed as described above.

The Canine Unit Supervisor will maintain liaison with the City of Hayward Animal Services Bureau to ensure that information regarding canine bites is not retained by its office. Canines used by law enforcement agencies are exempt from impoundment and reporting requirements to the Animal Services Bureau (Food and Agriculture Code § 31609(b)).

### 318.2.5   REPORTING CANINE INJURIES

In the event that a canine is injured, the injury will be immediately reported to the Watch Commander.

Medical care for any injured canine shall follow the protocol established in Policy Manual § 318.6 et seq.

The injury will be documented in a police report and forwarded to the Canine Unit Supervisor and Canine Unit Manager.

### 318.2.6   ASSIGNMENT OF CANINES

The canine teams shall be assigned to the Field Operations Division to supplement and assist the Field Operations Division.

Canine teams should function primarily as cover units however, they may be assigned by the Watch Commander to other functions based on the needs of the Department at the time.

Canine teams should not be assigned to handle matters that will take them out of service for extended periods of time unless absolutely necessary and only with the approval of the Watch Commander.

### 318.3   REQUEST FOR USE OF POLICE SERVICE DOG TEAMS

Personnel within the Department are encouraged to freely solicit the use of the police service dogs. Bureaus outside of the Field Operations Division requesting to use a police service dog team shall do so through the on-duty Watch Commander.

### 318.3.1   REQUEST FOR ASSISTANCE FROM OTHER AGENCIES

The Watch Commander must approve all requests for police service dog assistance from outside agencies subject to the following provisions:

(a)   Police service dog teams shall not be used outside the City of Hayward to perform any assignment that is not consistent with this policy.

(b)   Upon arrival at the scene, the handler has the ultimate decision as to whether the police service dog is to be used for a specific assignment.

(c)   Police service dog teams shall not be called out while off-duty or used outside the City of Hayward unless authorized by the Watch Commander.

(d)   It shall be the responsibility of the canine handler to coordinate with outside agency personnel in order to minimize the risk of unintended injury.

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
## Policy Manual

*Canine Program*

### 318.3.2    REQUEST FOR PUBLIC DEMONSTRATIONS
All public requests for a police service dog team shall be approved by the Canine Unit Manager prior to making any commitment.  Handlers shall not demonstrate any "apprehension" work to the public unless authorized to do so by the Canine Unit Manager.

### 318.4    POLICE SERVICE DOG HANDLER RESPONSIBILITIES
Police service dog handlers shall be responsible for, but not limited to, the following:

### 318.4.1    AVAILABILITY
The handler shall be available for call-out under conditions specified by the Canine Unit Manager.

### 318.4.2    CARE FOR THE CANINE AND EQUIPMENT
The handler shall ultimately be responsible for the health and welfare of the canine and shall ensure that the canine receives proper nutrition, grooming, training, medical care, affection, and living conditions. The handler will be responsible for the following:

(a)    Unless required by a particular application, the handler shall not expose the canine to any foreseeable and unreasonable risk of harm.

(b)    The handler shall maintain all Department equipment under his/her control in a clean and serviceable condition.

(c)    At the discretion of the Chief of Police, the canine handler may take the canine vehicle home during the handler's work week. All policies related to the use and safe operation of a police vehicle shall be adhered to by the handler. The canine handler shall not use the canine vehicle for personal use.

(d)    Handlers shall permit the Canine Unit Manager or Supervisor to conduct spontaneous on-site inspections of affected areas of their residence as well as the canine unit, to verify that conditions and equipment conform to this policy.

(e)    Any changes in the living status of the handler which may affect the lodging or environment of the canine shall be reported to the Canine Unit Supervisor as soon as possible.

(f)    When off-duty, canines shall be maintained in kennels, provided by the City, at the homes of their handlers. When a canine is kenneled at the handler's home, the gate shall be secured with a lock. When off-duty, canines may be let out of their kennels while under the direct control of their handlers.

(g)    The canine should be permitted to socialize in the home with the handler's family for short periods of time and under the direct supervision of the handler.

(h)    Under no circumstances will the canine be lodged at another location unless approved by the Canine Unit Supervisor or Canine Unit Manager.

(i)    When off-duty, handlers shall not involve their canines in any activity or conduct unless approved in advance by the Canine Unit Supervisor or Watch Commander.

(j)    Whenever a canine handler anticipates taking a vacation or an extended number of days off, it may be necessary to temporarily relocate the canine. In those situations, the handler shall give reasonable notice to the Canine Unit Supervisor so that appropriate arrangements can be made.

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Canine Program*

### 318.4.3   CANINE IN PUBLIC AREAS
All canines shall be kept on a leash when in areas that allow access to the public. Exceptions would include specific police operations for which the canines are trained.

(a)   Canines shall not be left unattended in any area to which the public may have access.

(b)   When the canine unit is left unattended all windows and doors shall be secured in such a manner as to prevent unauthorized access to the dog. The handler shall also insure that the unattended unit remains inhabitable for the canine.

### 318.4.4   HANDLER COMPENSATION
The police service dog handler shall be compensated for time spent in the care, feeding, grooming and other needs of the dog as provided in the Fair Labor Standards Act (FLSA). The compensation shall be prescribed in the employee's Memorandum of Understanding.

### 318.5   MEDICAL CARE OF THE POLICE SERVICE DOG
All medical attention shall be rendered by the designated police service dog veterinarian, except during an emergency as provided in Policy Manual § 318.6.2.

### 318.5.1   NON-EMERGENCY MEDICAL CARE
Non-emergency medical care will be coordinated through the Canine Unit Supervisor.

Any indication that a canine is not in good physical condition shall be reported to the Canine Unit Supervisor or the Canine Unit Manager as soon as practical.

All records of medical treatment shall be maintained in the police service dog's individual record file.

### 318.5.2   EMERGENCY MEDICAL CARE
The handler shall notify the Canine Unit Supervisor as soon as practicable when emergency medical care for the canine is required.

Depending on the severity of the injury or illness, the canine shall either be treated by the designated veterinarian or transported to a designated emergency medical facility for treatment. If the handler and dog are out of the area, the handler may use the nearest available veterinarian.

### 318.6   TRAINING
Before assignment in the field, each police service dog team shall be trained and certified to meet current POST standards.

The Canine Unit Supervisor shall be responsible for scheduling periodic training for all field personnel in order to familiarize them with how to conduct themselves in the presence of Department canines.

### 318.6.1   CONTINUED TRAINING
Each canine team shall thereafter be re-certified to current POST standards or other recognized and approved certification standards on an annual basis. Additional training considerations are as follows:

(a)   Canine teams shall receive training as defined in the current contract with the Department's canine training provider.

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
### Policy Manual

*Canine Program*

(b)  Canine handlers are encouraged to engage in additional training with approval of the Canine Unit Manager.

(c)  To ensure that all training is consistent, no handler, trainer, or outside vendor is authorized to train to a standard that is contrary to the policies of the Hayward Police Department.

(d)  All canine training shall be conducted while on-duty unless otherwise approved by the Canine Unit Supervisor or Canine Unit Manager.

### 318.6.2   FAILURE TO SUCCESSFULLY COMPLETE POST TRAINING
No police service dog team failing POST police service dog certification or other recognized and approved certification standards shall be deployed in the field until certification is achieved. When practical, pending successful certification, the police service dog handler shall be temporarily reassigned to regular patrol duties.

### 318.6.3   TRAINING RECORDS
All police service dog training records shall be maintained in the police service dog handler's training file.

### 318.7   CANINE UNIT MANAGER RESPONSIBILITIES
The Canine Unit Manager shall be appointed by staff and shall manage the Canine Program. The Canine Unit Manager is directly responsible to the Field Operations Division Commander.  The Canine Unit Manager shall be responsible for, but not limited to, the following:

(a)  Oversee the process for selecting the Canine Unit Supervisor.

(b)  Maintain liaison with administrative staff and functional supervisors.

(c)  Responsible for the financial obligations of the Canine Unit.

(d)  Oversee the procurement of needed equipment and services for the Canine Unit.

### 318.8   CANINE UNIT SUPERVISOR RESPONSIBILITIES
The Canine Unit Supervisor shall be selected from the special assignment process and shall report all Canine Unit matters to the Canine Unit Manager. The Canine Unit Supervisor shall be responsible for, but not limited to, the following:

(a)  Review all Canine Use Reports to ensure compliance with policy and to identify training issues and other needs of the program.

(b)  Maintain accurate records to document each canine teams activity.

(c)  Maintain liaison with other agency canine supervisors.

(d)  Maintain liaison with the vendor kennels.

(e)  Be responsible for scheduling all canine related activities.

### 318.9   REVISIONS
Enacted: December 15, 2007

Revised: August 19, 2008

Revised: February 18, 2009

Revised: May 9, 2009

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Canine Program*

Revised: August 13, 2010

Revised: March 16, 2011

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

Exhibit <u>B</u>

**Hayward Police Department**
Policy Manual

# Use of Force

## 300.1   PURPOSE AND SCOPE

This policy recognizes that the use of force by law enforcement requires constant evaluation. Even at its lowest level, the use of force is a serious responsibility. The purpose of this policy is to provide officers of this Department with guidelines on the reasonable use of force. While there is no way to specify the exact amount or type of reasonable force to be applied in any situation, each officer is expected to use these guidelines to make such decisions in a professional, impartial and reasonable manner.

### 300.1.1   ACCREDITATION STANDARDS

This section pertains to the following CALEA Standards: 1.3.1, 1.3.2, 1.3.4, 1.3.5, 1.3.6, 1.3.7, 1.3.8, 1.3.13, 22.2.1, 52.2.7, 74.3.1

### 300.1.2   PHILOSOPHY

The use of force by law enforcement personnel is a matter of critical concern both to the public and to the law enforcement community.  Officers are involved on a daily basis in numerous and varied human encounters and when warranted, may use force in carrying out their duties.

Officers must have an understanding of, and true appreciation for, the limitations of their authority.  This is especially true with respect to officers overcoming resistance while engaged in the performance of their duties.

The Department recognizes and respects the value of all human life and dignity without prejudice to anyone.  It is also understood that vesting officers with the authority to use reasonable force and protect the public welfare requires a careful balancing of all human interests.

### 300.1.3   DUTY TO INTERCEDE

Any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of such excessive force.  Such officers should also promptly report these observations to a supervisor.

## 300.2   POLICY

It is the policy of this Department that officers shall use only that amount of force that reasonably appears necessary, given the facts and circumstances perceived by the officer at the time of the event, to effectively bring an incident under control. "Reasonableness" of the force used must be judged from the perspective of a reasonable officer on the scene at the time of the incident.  Any interpretation of reasonableness must allow for the fact that police officers are often forced to make split-second decisions in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation.

Given that no policy can realistically predict every possible situation an officer might encounter in the field, it is recognized that each officer must be entrusted with well-reasoned discretion in determining the appropriate use of force in each incident.

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Use of Force*

While it is the ultimate objective of every law enforcement encounter to minimize injury to everyone involved, nothing in this policy requires an officer to actually sustain physical injury before applying reasonable force.

Officers will be instructed and show proficiency in the use of all authorized lethal and less lethal weapons and be knowledgeable of and issued copies of all relevant Departmental Use of Force policies before being authorized to carry lethal and less lethal weapons.

## 300.2.1   USE OF FORCE TO EFFECT AN ARREST

Any peace officer that has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape, or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his/her efforts by reason of resistance or threatened resistance of the person being arrested; nor shall such officer be deemed the aggressor or lose his/her right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance (Penal Code § 835(a)).

## 300.2.2   FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE

When determining whether or not to apply any level of force and evaluating whether an officer has used reasonable force, a number of factors should be taken into consideration. These factors include, but are not limited to:

(a)   The conduct of the individual being confronted (as reasonably perceived by the officer at the time).

(b)   Officer/subject factors (age, size, relative strength, skill level, injury/exhaustion and number of officers vs. subjects).

(c)   Influence of drugs/alcohol (mental capacity).

(d)   Proximity of weapons.

(e)   The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

(f)   Time and circumstances permitting, the availability of other options (what resources are reasonably available to the officer under the circumstances).

(g)   Seriousness of the suspected offense or reason for contact with the individual.

(h)   Training and experience of the officer.

(i)   Potential for injury to citizens, officers and suspects.

(j)   Risk of escape.

(k)   Other exigent circumstances.

It is recognized that officers are expected to make split-second decisions and that the amount of an officer's time available to evaluate and respond to changing circumstances may impact his/her decision.

While various degrees of force exist, each officer is expected to use only that degree of force reasonable under the circumstances to successfully accomplish the legitimate law enforcement purpose in accordance with this policy.

It is recognized however, that circumstances may arise in which officers reasonably believe that it would be impractical or ineffective to use any of the standard tools, weapons or methods provided by the Department. Officers may find it more effective or practical to improvise their response to rapidly unfolding conditions they are confronting.   In

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Use of Force*

such circumstances, the use of any improvised device or method must nonetheless be objectively reasonable and utilized only to the degree reasonably necessary to accomplish a legitimate law enforcement purpose.

### 300.2.3   NON-DEADLY FORCE APPLICATIONS

Any application of force that is not reasonably anticipated to create a substantial likelihood of death or very serious injury shall be considered non-deadly force. Each officer is provided with equipment, training and skills to assist in the apprehension and control of suspects as well as protection of officers and the public. Non-deadly force applications may include but are not limited to leg restraints, control devices and ECD device described in <u>Policy Manual</u> §§ 306, 308 and 309 respectively.

### 300.2.4   PAIN COMPLIANCE TECHNIQUES

Pain compliance techniques may be very effective in controlling a passive or actively resisting individual. Officers may only apply those pain compliance techniques for which the officer has received departmentally approved training and only when the officer reasonably believes that the use of such a technique appears necessary to further a legitimate law enforcement purpose. Officers utilizing any pain compliance technique should consider the totality of the circumstance including, but not limited to:

(a)   The potential for injury to the officer(s) or others if the technique is not used.

(b)   The potential risk of serious injury to the individual being controlled.

(c)   The degree to which the pain compliance technique may be controlled in application according to the level of resistance.

(d)   The nature of the offense involved.

(e)   The level of resistance of the individual(s) involved.

(f)   The need for prompt resolution of the situation.

(g)   If time permits (e.g., passive demonstrators), other reasonable alternatives.

The application of any pain compliance technique shall be discontinued once the officer determines that compliance has been achieved.

### 300.2.5   CAROTID RESTRAINT

The proper application of the carotid restraint hold by a trained officer may be effective in restraining a violent individual.   Only officers who have successfully completed Department-approved training on the use of the carotid restraint hold and the Department Use of Force Policy are authorized to use the technique. After initial training, officers shall complete training annually on the use of the carotid restraint hold.

(a)   The officer shall have received Departmentally approved training in the use and application of the carotid restraint and that training shall be documented in the employees training file.   The Department will provide annual refresher training to ensure that the skills required for proper application are maintained. If any employee authorized to perform the carotid restraint fails to show proficiency in the proper application of this restraint, the employee will be provided with remedial training. The employee will not be returned to field assignment until proficiency in the application of the carotid restraint can be demonstrated to a certified trainer and documented accordingly.

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Use of Force*

The carotid restraint may only be used when the officer reasonably believes that such a hold appears necessary to arrest or control a violent or potentially violent subject, where such use could prevent or minimize the risk of injury to an officer or other person(s).

After any application of any carotid restraint hold, the officer shall ensure the following steps occur:

(a)   Any individual who has had the carotid restraint hold applied, regardless of whether he/she was rendered unconscious, shall be promptly examined by paramedics or other qualified medical personnel.

(b)   The officer shall inform any person receiving custody, or any person placed in a position of providing care, that the individual has been subjected to the carotid restraint hold and whether the subject lost consciousness as a result.

(c)   Any officer applying the carotid restraint shall promptly notify a supervisor of the use or attempted use of such hold.

(d)   The use or attempted use of the carotid restraint shall be thoroughly documented by the officer in the related incident report.

## 300.3   DEADLY FORCE APPLICATIONS
While the use of a firearm is expressly considered deadly force, other force might also be considered deadly force if the officer reasonably anticipates that the force applied will create a substantial likelihood of causing death or very serious injury. Use of deadly force is justified in the following circumstances:

(a)   An officer may use deadly force to protect himself/herself or others from what he/she reasonably believe would be an imminent threat of death or serious bodily injury.

(b)   An officer may use deadly force to stop a fleeing suspect when the officer has probable cause to believe that the suspect has committed, or intends to commit, a felony involving the infliction or threatened infliction of serious bodily injury or death, and the officer reasonably believes that there is an imminent or future potential risk of serious bodily injury or death to any other person if the suspect is not immediately apprehended. Under such circumstances, a verbal warning should precede the use of deadly force, where feasible.

### 300.3.1   SERIOUS BODILY INJURY DEFINITION
**Serious Bodily Injury** - means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement. (Penal Code § 243(f)(4))

## 300.4   REPORTING THE USE OF FORCE
Any use of physical force by a member of this Department which utilizes any method of a take down, chemical agents, K9 bite, the carotid control, impact weapons, electronic control devices, lethal force or any other force that either results in injury, complaint of pain or death to the subject shall be documented promptly, completely, and accurately in an appropriate report depending on the nature of the incident.

Members of this Department who are investigating an incident where a reportable use of force occurred shall make an effort to conduct witness attempts as soon as practical following the use of force.   All witness statements shall be audio recorded utilizing a Departmental audio recording device.  It is also recommended that witness attempts be

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
### Policy Manual

*Use of Force*

made by those not involved in the use of force incident. All recordings obtained shall be placed into evidence pursuant to Policy Manual § 450 - Use of Audio Recorders.

Members of this Department who are investigating an incident where a reportable use of force occurred shall audio record all suspect interviews utilizing a Departmental audio recording device. All recordings obtained shall be placed into evidence pursuant to Policy Manual § 450 - Use of Audio Recorders.

## 300.4.1   NOTIFICATION TO SUPERVISORS
Supervisory notification shall be made as soon as practicable following the application of physical force, under any of the following circumstances:

(a)   The application of force appears to have caused physical injury.

(b)   The individual has expressed a complaint of pain.

(c)   Any application of a control device.

(d)   The individual has been rendered unconscious.

(e)   If the force appears to have caused physical injury, the on-duty Watch Commander shall also be notified.

## 300.4.2   MEDICAL ATTENTION FOR INJURIES SUSTAINED USING FORCE
Prior to booking or release, medical assistance shall be obtained for any person who has sustained visible injury, expressed a complaint of injury or continuing pain, or who has been rendered unconscious. Based upon the officer's initial assessment of the nature and extent of the subject's injuries, medical assistance may consist of examination by fire personnel, paramedics or hospital staff. If any such individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practical, should be witnessed by another officer and/or medical personnel. If an audio recording is made of the contact or an interview with the individual, any refusal should be included, if possible.

Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond physical characteristics, unusually high tolerance to pain or who require a protracted physical encounter with multiple officers to bring under control may be at an increased risk of sudden death and should be examined by qualified medical personnel as soon as practicable. Any individual exhibiting signs of distress after such an encounter shall be medically cleared prior to booking.

## 300.5   SUPERVISOR RESPONSIBILITY
When a supervisor is able to respond to an incident in which there has been a reported application of force, the supervisor is expected to:

(a)   Obtain the basic facts from the involved officer(s). Absent an allegation of misconduct or excessive force, this will be considered a routine contact in the normal course of duties.

(b)   Ensure witness attempts and witness statements were taken pursuant to Policy Manual § 300.4.

(c)   Ensure that any injured parties are examined and treated.

(d)   Once an initial medical assessment or first aid has been completed, ensure that photographs have been taken of any areas involving visible injury or complaint of pain as well as overall photographs of uninjured areas. These photographs should also be obtained until all potential civil litigation is expired.

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
### Policy Manual

*Use of Force*

(e)     Review and approve all related reports.

Should the supervisor suspect, determine or receive information that any application of force was not within policy, a separate internal administrative investigation shall be initiated. The supervisor shall also:

(a)     Separately obtain a recorded interview with the subject(s) whom force was applied. If this interview is conducted without the person having voluntarily waived his/her Miranda rights, the following shall apply:

     1.     The content of the interview should not be summarized or included in any related criminal charges.

     2.     The fact that a recorded interview was conducted should be documented pursuant to current administrative investigation procedures.

     3.     The recording shall be included in the administrative investigation and retained pursuant to <u>Government Code</u> § 34090 as required by law.

(b)     The supervisor shall notify the appropriate Division Commander and Office of Ethical Standards Lieutenant of the circumstances as soon as possible for direction on who will assume the investigative responsibilities from that point on.

In the event that a supervisor is unable to respond to the scene of an incident involving the reported application of force, the supervisor is still expected to complete as many of the above items as circumstances permit.

## 300.5.1     ADMINISTRATIVE LEAVE PENDING REVIEW

In the event the application of force or other employee action(s) result in serious bodily injury or death, the employee(s) directly involved shall be given paid administrative leave and it shall be the responsibility of the Watch Commander to make schedule adjustments to accomodate such leave.  The Chief of Police or Division Commander of the affected employee(s) will determine the appropriateness and duration of extended mandatory administrative leave, based upon the findings of the preliminary criminal/administrative investigation and the recommendation of the psychotherapist regarding the officer's readiness for field assignment.  Generally, the length of administrative leave shall not exceed the time remaining in the employee's current scheduled work week. An employee may request additional administrative leave time subject to approval of the Chief of Police or affected Division Commander(s), based upon information provided to establish the need to grant the request.

The officer(s), upon being placed on administrative leave, will automatically be temporarily assigned to the Personnel and Training Lieutenant for the duration of the administrative leave.

During this time, the officer(s) shall maintain regular contact with the Personnel and Training Lieutenant. Regular contact will consist of once per week, unless other arrangements are approved or requested by the affected Division Commander(s). While the employee is off, their payroll hours will revert to Monday through Friday, 8:00 am to 4:00 pm. Each employee will also be expected to remain available to the Department by phone during those hours.

If an employee has been on administrative leave for six months or longer, that employee must report to the Personnel and Training Office to ensure all policy and/or training mandates and weapons qualifications have been met prior to returning to full duty.

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Use of Force*

## 300.6   USE OF FORCE REVIEW

The Hayward Police Department objectively reviews and evaluates all reportable uses of force.

### 300.6.1   USE OF DEADLY FORCE REVIEW

The Hayward Police Department will convene an in-house panel to review all reportable uses of deadly force by an employee, whether on-duty or off-duty, that results in injury or death to a person.

The panel also reviews the circumstances surrounding all field related accidental or intentional discharges of firearms whether the employee is on-duty or off-duty.

The review shall be based upon those facts which were reasonably believed by the officer at the time of the incident, applying legal requirements, Department policy and procedures, and approved training to those facts. Facts later discovered but unknown to the officer at the time, can neither justify nor call into question an officer's decision regarding use of force.

Incidents occurring during training at the range, authorized use of a firearm against a vicious animal, dispatching an injured animal, or during vehicle check-out in the back lot of the Department will only require a Supervisory Notes and Observations Log of the incident routed through the Chain of Command, pursuant to Policy Manual § 304.5.

The panel shall be comprised of the following members:

(a)   Members of Command Staff.

(b)   At least one Hayward Police Department use of force instructor.

(c)   At the request of the involved employee, a representative of the employee's bargaining unit.

(d)   Any other persons deemed appropriate by the Chief of Police.

The Commander of the Division of the involved employee shall serve as the chairperson of the panel.

The panels findings shall be by consensus and is limited to a determination of whether the use of deadly force was within Departmental policy and procedure or in violation of Departmental policy and procedure.

The panel chairperson shall forward the findings of the panel to the Chief of Police for review.

### 300.6.2   USE OF NON-DEADLY FORCE REVIEW

The Hayward Police Department reviews all reportable uses of non-deadly force by employees of the Department. The review process is as follows:

(a)   Reviewing supervisors are to ensure that all reportable uses of non-deadly force are described thoroughly, completely, and accurately in the police report and supplemental reports that document the incident.

(b)   The reviewing supervisor shall complete a Blue Team Use of Force entry based on the information contained in the police reports, including, but not limited to, the names of the employee(s) involved, the names of the person(s) who force was used on, the resistance offered or employed by the resisting person(s), the reason for the use of force, the type of force used and whether or not the force used was effective in

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Use of Force*

overcoming the resistance presented, injuries sustained by any party, the location, date, time, and report number assigned to the incident.

1.  If, in the opinion of the reviewing supervisor the use of force was reasonably necessary given the facts and circumstances, the Blue Team entry will be forwarded to their manager.

2.  If, in the opinion of the reviewing supervisor the use of force was not reasonably necessary given the facts and circumstances, the reviewing supervisor shall forward the reports to the appropriate manager for review and any necessary action.

(c)  The reviewing supervisor shall forward the completed Blue Team entry to their manager who shall compare the Blue Team entry with the police reports to ensure that all items are accurately reported.

1.  If, in the opinion of the reviewing manager, the Blue Team entry is complete and the use of force was reasonably necessary given the facts and circumstances, the Blue Team entry will be forwarded to the Office of Ethical Standards.

2.  If, in the opinion the reviewing manager, the force used was not reasonably necessary given the facts and circumstances, the reviewing manager shall forward the reports to the appropriate Division Commander for review and any necessary action.

(d)  Once received by the Office of Ethical Standards, the Blue Team entry and the police reports will be reviewed and if the force was reasonably necessary given the facts and circumstances, the incident will be designated "within policy" and closed.

1.  If, upon review by the Office of Ethical Standards, there is a question as to the reasonableness of the force used, the reports will be forwarded to the appropriate Division Commander for review and any necessary action.

## 300.7   ADMINISTRATIVE REVIEW

All reported applications of force shall be documented and reviewed according to the procedures developed by the Office of Ethical Standards Unit under the direction of the Chief of Police. The Office of Ethical Standards Unit Lieutenant is responsible to provide an annual report and analysis of use of force to the Chief of Police during the month of January for the preceding calendar year.

## 300.8   REVISIONS

Enacted: December 17, 2007

Revised: August 19, 2008

Revised: February 18, 2009

Revised: May 9, 2009

Revised: July 31, 2009

Revised: February 7, 2010

Revised: April 27, 2010

Revised: August 13, 2010

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC

# Hayward Police Department
Policy Manual

*Use of Force*

Revised: March 16, 2011

Adopted: 2011/03/16 © 1995-2011 Lexipol, LLC