1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT
8        NORTHERN DISTRICT OF CALIFORNIA
9        SAN FRANCISCO DIVISION
10

11   CHINA MCKAY, and others,                Case No. 12-cv-01613 NC

12              Plaintiffs,                   **ORDER GRANTING IN PART AND
                                             DENYING IN PART MOTION FOR
13        v.                                  SUMMARY JUDGMENT**

14   CITY OF HAYWARD, and others,            Re: Dkt. No. 27

15              Defendants.

16

17        Hayward Police Officers used a police dog to track an armed suspect who fled after

18   robbing a Domino's Pizza at night.  Nicky, a Dutch Shepherd trained to bite and hold,

19   guided the officers to an eight-foot wall.  Police Officer Loring Cox, without warning, lifted

20   Nicky over the wall and lowered him on a thirty-three-foot leash into the backyard of a

21   mobile home.  Jesse Porter, an 89-year-old who resided in the mobile home and had no

22   connection to the robbery, was alone in his backyard.  Nicky bit Porter on the leg, leaving a

23   gaping hole.  The wound later became infected, and doctors amputated Porter's leg above

24   the knee.  Two months after the bite, Porter died.  Porter's children and estate sued

25   Hayward, Officer Cox, and the two other officers involved, alleging violations of his

26   constitutional rights and various state law claims.  Those defendants now move for

27   summary judgment.

28   //

1   The central issue is whether plaintiffs have shown that a jury could conclude that

2   Officer Cox's conduct was unreasonable under the circumstances.  The other issues to be

3   resolved are (1) whether the officers are entitled to immunity for plaintiffs' federal and state

4   law claims; and (2) whether the City of Hayward is liable for the allegedly unconstitutional

5   and tortious conduct of its employees.  After considering the parties' arguments and

6   submissions, the Court GRANTS IN PART AND DENIES IN PART defendants' motion

7   for summary judgment.

## I. BACKGROUND

9   **A.   Facts**

10   On May 29, 2011, Jesse Porter was bitten by Nicky, a police service dog handled by

11   Officer Loring Cox, a member of the Hayward Police Department.  Pls.' Opp'n, Ex. 7, Dkt.

12   No. 43 at 14.  Mr. Porter was in his own backyard when Officer Cox lowered Nicky over an

13   eight-foot wall into the yard, without warning, in order to pursue a scent.  Cox Decl., Dkt.

14   No. 27-3 ¶¶ 22-24.  Nicky's bite left a gaping hole in the calf muscle of Mr. Porter's left

15   leg, exposing tendons and muscle.  Pls.' Opp'n, Ex. 6, Dkt. No. 48 at 15.

16   At approximately 10:52 p.m., the Hayward Fire Department and American Medical

17   Response arrived to provide medical care to Mr. Porter.  Pls.' Opp'n, Ex. 7, Dkt. No. 43 at

18   14.  He was transported to Eden Medical Center, where he received treatment for his

19   wound.  Pls.' Opp'n, Ex. 6, Dkt. No. 43 at 15.  Mr. Porter's leg became gangrenous and had

20   to be amputated above the knee on June 10, 2011.  Pls.' Opp'n, Dkt. No. 46 at 6.  Mr. Porter

21   then went into a residential care facility, where he died on July 27, 2011.  *Id.*

22   The night that Officer Cox and Nicky entered Mr. Porter's yard, they were responding

23   to an armed robbery of a nearby Domino's Pizza.  At 10:30 p.m., dispatch received a call

24   that an armed robbery had just occurred.  Pls.' Opp'n, Ex. 8, Dkt. No. 43 at 18.  Responding

25   to such a call is categorized as "high-priority" by the Hayward Police Department.  Fovel

26   Decl., Dkt. No. 43 at 25:20.  The victim stated that the suspect was armed with a handgun

27   and had fled from the Domino's heading north out the door, at which point the victim lost

28   sight of him.  *Id.* at 31:1, 6; 31:17-22.

1   Officer Cox and Nicky arrived on the scene at 10:35 p.m.  Fovel Depo., Dkt. No 43 at

2   29:10-20; Dkt. No. 43 at 19.  Officers Robert Purnell and Michael Miller arrived shortly

3   thereafter.  Cox Decl., Dkt. No. 27-3 ¶ 13.  At 10:38 p.m., Officer Cox and Nicky began

4   their track, with Officers Purnell and Miller, acting as "cover" officers.  *Id.* ¶¶ 13, 15.  After

5   trailing a scent from the pizza shop, Nicky took a right turn off of West Winton Avenue and

6   sprinted down a commercial driveway.  Cox Decl., Dkt. No. 27-3 ¶¶ 18-19.  Nicky stopped

7   when he reached an eight-foot-high concrete wall at the rear of the business complex, which

8   separates the complex from a residential mobile home park, and pawed at the wall.  *Id.*

9   ¶¶ 19-20.

10   At this point, Officer Cox stood on a wooden pallet to look over the wall and "saw the

11   backyards of several mobilehomes and landscaping."  *Id.* ¶ 21.  Cox decided to lower Nicky

12   into the backyard.  *Id.* ¶ 22.  He chose to send the dog over the wall before cover officers

13   scaled the wall in order to protect the officers' safety and preserve the integrity of the scent.

14   *Id.* ¶ 22.  Cox did not announce his presence or the deployment of Nicky because the

15   suspect had fled the scene and was thought to possess a handgun.  *Id.* ¶ 23.

16   Officer Cox and Officer Purnell gave inconsistent statements about whether Nicky

17   was supervised in the yard.  Cox states that he lowered Nicky over the wall and onto the

18   ground by his leash, which was thirty-three feet long.  *Id.* ¶ 24.  Cox also states that Nicky

19   remained lying down once he reached the ground until Cox jumped down off the wall into

20   Mr. Porter's backyard.  *Id.* ¶¶ 24-25.  Once Cox was in the backyard, he gave Nicky the

21   command to "track."  *Id.* ¶ 25.

22   Officer Purnell testified that Nicky was searching Mr. Porter's yard unsupervised, and

23   that Cox was still standing on the wooden pallet, on the side of the wall closest to the

24   business complex, when Cox announced that it sounded like Nicky had apprehended the

25   suspect.  Purnell Decl., Dkt. No. 43 at 44: 14-18.  Purnell states that Cox did not go over the

26   wall and enter Mr. Porter's backyard until after Cox announced the bite.  *Id.* at 45:12-15.

27   //

28

Case No. 12-cv-01613 NC
ORDER RE: MOTION FOR SUMMARY          3
JUDGMENT

**B.      Procedural History**

Plaintiffs China McKay and Jesse Porter, Jr. are Mr. Porter's biological children. Dkt. No. 1 ¶ 8. Jesse Porter, Jr. is also the personal representative of Mr. Porter's estate. *Id.* Plaintiffs sued the City of Hayward, former Police Chief Ron Ace, Officer Cox, Officer Miller, and Officer Purnell in this Court on March 3, 2012. Dkt. No. 1. The complaint alleged (1) that Officers Cox, Purnell, and Miller seized Mr. Porter with excessive force in violation of his Fourth Amendment rights; (2) that the City of Hayward was liable for the officers' unreasonable seizure; (3) that defendants' actions deprived plaintiffs of the companionship of their father without due process; as well as (4) constitutional violations under California Governance Code § 52.1; (5) assault and battery; (6) intentional infliction of emotional distress; (7) negligence; (8) wrongful death; (9) negligence per se under California Civil Code § 3342; and (10) that the City of Hayward was liable for the negligent and tortious actions of its employees. *See generally* Dkt. No. 1.

Defendants filed an answer and then moved for summary judgment. Dkt. Nos. 4, 27. Plaintiffs opposed defendants' motion. Dkt. No. 46. They also dismissed plaintiff Jonathan Porter Brown, Mr. Porter's step son, from the action, dismissed all claims against former Police Chief Ron Ace in his official capacity, and dismissed their claims under California Civil Code § 3342 against Officers Cox, Purnell, and Miller. *Id.* at 2. The Court held a hearing on the summary judgment motion on May 29, 2013. Dkt. No. 61. Plaintiffs have since dismissed their state law claims for excessive force under California Civil Code § 52.1 and intentional infliction of emotional distress. Dkt. No. 63 at 2.

**C.      Jurisdiction**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. The parties consented to the jurisdiction of a magistrate judge under 29 U.S.C. § 636(c). Dkt. No. 5 at 8.

**D.      Objections to Evidence**

Federal Rule of Civil Procedure 56(c) allows parties to object to inadmissible evidence cited to support or dispute a fact. Plaintiffs and defendants each object to certain evidence relied upon in their respective briefs.

Case No. 12-cv-01613 NC
ORDER RE: MOTION FOR SUMMARY            4
JUDGMENT

1

### 1.    Deposition Testimony of Sergeant Raymond Sisson

2    Defendants object to plaintiffs' reliance on several parts of the testimony of Sergeant

3  Sisson, who is the K-9 Unit Supervisor.  They assert that Sisson's testimony lacks

4  foundation, personal knowledge, and is irrelevant.  The parts of the testimony at issue

5  involve his responses to questions about his role as supervisor of the K-9 Unit.  Dkt. No. 52

6  ¶¶ 1, 9, 10, 12.  Specifically, Sisson testified about whether he reviewed Nicky's training

7  records with Cox and best practices for using a police dog in a residential area.  Sisson

8  stated that he has weekly meetings with the officers of the K-9 unit to discuss training,

9  incidents that have occurred, and "how we can improve on those incidents."  Sisson Depo.,

10 Dkt. No. 43 at 115:15-25.  Sisson's description of his role lays adequate foundation to show

11 that he has the personal knowledge to testify about what the best practices of the K-9 unit

12 should be.  He certainly has personal knowledge to testify about what he has or has not

13 done in terms of reviewing Nicky's records.  And this testimony is relevant to plaintiffs'

14 claims against the City.  Defendants' objections to these portions of Sisson's testimony are

15 OVERRULED.

16

### 2.    Deposition Testimony of Lieutenant Bryan Matthews

17    Defendants object to parts of Lieutenant Matthews' testimony regarding Hayward

18 Police Department's policy for using a police dog in a residential area.  Dkt. No. 52 ¶¶ 8,

19 11.  Defendants contend that Matthews' testimony lacks foundation, personal knowledge,

20 and is irrelevant.  *Id.*  First, Matthews' testimony is relevant to the reasonableness of Cox's

21 deployment of Nicky and the City's liability for his actions.  Second, Matthews is the unit

22 manager of Hayward Police Department's K-9 team.  Matthews Depo., Dkt. No. 40 at 5:9.

23 He evaluates the policies and training of the Hayward Police Department's K-9 Unit, which

24 makes him personally knowledgeable about the policies he testified about.  Matthews

25 Depo., Dkt. No. 43 at 108:1-10.  Accordingly, defendants' objections to these portions of

26 Matthews' testimony are OVERRULED.

27 //

28

1

2

3

### 3. Deposition Testimony of Officer Craig Fovel

Plaintiffs object to defendants' reliance on testimony from Officer Fovel about surveillance footage showing the direction in which the robbery suspects fled. Dkt. No. 35 ¶ 5. They contend that defendants' suggestion that Cox and Nicky tracked in a particular direction because of this footage is misleading and violates Federal Rule of Evidence 106. *Id.* Fovel testified about what he saw on the surveillance footage. Plaintiffs may, under Rule 106, introduce evidence of the time that the footage was played for the police relative to the time that Cox and Nicky began their search. *See* Fed. R. Evid. 106. Plaintiffs' objection is OVERRULED.

### 4. Nicky's Response Records and Cox's Report of the May 29 Incident

Plaintiffs also object to defendants' reliance on statistics from Nicky's response records and Officer Cox's written report of the May 29 incident on the grounds that defendants failed to produce these records in discovery. The Court has heard plaintiffs on the issue of defendants' production of K-9 records before. At a discovery hearing on April 3, 2013, plaintiffs stated that they had received from defendants records of "all deployments," which are summaries produced every time a police dog is used in the field, up to the incident date, K-9 unit training records, as well as documents related to Cox's personnel file. Hearing Tr., Dkt. No. 56 at 4:19-20:14. In addition to what had been received, plaintiffs sought complaints against all K-9 officers, which the Court ordered produced within fourteen days. Dkt. No. 26. Nearly two months later, and three months after the close of discovery, the Court again heard plaintiffs' argument that defendants failed to produce certain records and denied their motion to compel additional discovery. Dkt. No. 60. Plaintiffs' objection here is substantially the same argument. It is OVERRULED.

### 5. Other Objections

Both parties make additional objections. *See* Dkt. Nos. 35, 52. The Court declines to rule on these objections at this time because it resolves defendants' motion for summary judgment on other facts.

Case No. 12-cv-01613 NC
ORDER RE: MOTION FOR SUMMARY
JUDGMENT

6

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c). All reasonable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## III. DISCUSSION

The issues raised in defendants' motion for summary judgment are first, whether a reasonable jury could conclude that Officer Cox's use of Nicky violated Mr. Porter's Fourth Amendment rights, and second, whether the individual officers are entitled to qualified immunity. The Court then considers whether the City of Hayward can be held liable for any unlawful actions of the individual officers. Finally, the Court turns to plaintiffs' state law claims against the individual officers and whether the City can be held liable under state law for the officers' actions.

### A.   Plaintiffs' Claim for Excessive Force Under 42 U.S.C. § 1983

Plaintiffs allege that defendants violated Mr. Porter's right to be free from unreasonable seizures when they sent Nicky into Mr. Porter's yard, knowing the dog was

1  trained to bite and intending to apprehend a robbery suspect, and Nicky consequently bit

2  and severely injured Mr. Porter. Defendants move for summary judgment on plaintiffs'

3  § 1983 excessive force claim arguing first, that Mr. Porter was not seized, and therefore, no

4  constitutional violation occurred, and second, that the individual officers are entitled to

5  qualified immunity. Defendants also argue that the City cannot be held liable for the acts of

6  the individual officers because plaintiffs cannot show the City caused the alleged violation.

### 1. Mr. Porter was seized and is protected by the Fourth Amendment.

7

8    A seizure did occur. "[O]nly when there is a governmental termination of freedom of

9  movement through means intentionally applied" has a seizure occurred under the Fourth

10  Amendment. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989). But as long as the

11  government action is willful, "[a] seizure occurs even when an unintended person or thing is

12  the object of the detention or taking." *Id.* at 596; *cf. Hill v. California*, 401 U.S. 797, 803-

13  04 (1971) (holding that arrest of plaintiff, where police were mistaken as to his identity, was

14  a seizure under the Fourth Amendment). That Mr. Porter was not the robber or the target of

15  the search does not matter. What creates the seizure is the government's—here the

16  Hayward City Police Department and Officer Cox in particular—intentional deployment of

17  a police dog trained to track and bite a person. *Rogers v. City of Kennewick*, 304 F. App'x

18  599, 601 (9th Cir. 2008) ("Although Mr. Rogers was not the actual suspect that the police

19  officers sought, the police K-9's biting of Mr. Rogers constituted a seizure under the Fourth

20  Amendment.") (citing *Bower*, 489 U.S. at 596); *Vathekan v. Prince George's Cnty.*, 154

21  F.3d 173, 178 (4th Cir. 1998) ("By allowing the dog to pass through the interior door, [the

22  officer] intended that the dog find and bite that person. The seizure of Vathekan was

23  therefore purposeful, even if [the officer] would not have seized her had he known she was

24  innocent."). Because the Fourth Amendment applies to Cox's conduct, the Court assesses

25  whether the seizure was reasonable.

### 2. Whether Cox's actions were reasonable is a question for the jury.

26

27    "Determining whether the force used to effect a particular seizure is reasonable under

28  the Fourth Amendment requires a careful balancing of the nature and quality of the

intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation and internal quotation marks omitted). The inquiry is objective. *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994). The gravity of a particular intrusion on an individual's Fourth Amendment rights depends on the type and amount of force inflicted. *Id.* The importance of the government's interests hinges on "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003). The Court then "balance[s] the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Id.* "Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." *Chew*, 27 F.3d at 1440.

### a.    The gravity of the intrusion

According to K-9 Unit Supervisor Sergeant Sisson, Hayward Police Department's dogs are trained to bite and hold. Sisson Decl., Dkt. No. 43 at 134:6-7, 19. When tracking a scent, a dog is trained to apprehend on its own; the officer does not give a separate command to bite. *Id.* at 133:10-12, 15-19. As a result, "whether the individual is passive or aggressive," or whether the individual the dog locates is the suspect, the dog is trained to bite and hold. *Id.* at 133:20-23, 13-20.

Officer Cox declared, however, that on the night of the incident he commanded Nicky to "track," which instructs the dog "to continue the trail and alert when [he] locates a suspect." Cox Decl., Dkt. No. 27-3 ¶ 25. "Track" is a separate command from "search and bite" and "bite." *Id.* Cox also stated that Nicky is trained not to bite a person that surrenders and is passive. Cox Depo., Dkt. No. 43 at 68:21-23. Nicky is trained to re-bite if he detects a person escaping or attacking. Cox Depo., Dkt. No. 43 at 102:16-24. For the purposes of deciding the motion for summary judgment, the Court resolves this conflict in

//

1   favor of plaintiffs and infers that Nicky is trained to bite and to maintain that grip until

2   ordered to release and that this type of force was used on Mr. Porter.

3        Nicky's bite left a gaping hole in the calf muscle of Mr. Porter's left leg, exposing

4   tendons and muscle. Pl.'s Opp'n, Ex. 6, Dkt. No. 48 at 15. The image of the wound from

5   Eden Medical Center shows that most of the calf muscle is missing from Mr. Porter's leg.

6   *Id.* None of the individual officers at the scene recounted for how long Nicky was biting

7   Mr. Porter. *Cf. Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (holding

8   that "excessive duration of the bite . . . could constitute excessive force"). Officer Cox

9   declared that Mr. Porter did not make any noise or move in response to Nicky's bite. Cox

10  Decl., Dkt. No. 27-3 ¶ 27. This suggests that Mr. Porter did not struggle and was likely not

11  bitten multiple times by Nicky in an attempt to maintain his grasp. Inferring that just one

12  bite from Nicky was sufficient to sever most of Mr. Porter's calf muscle from his leg, the

13  Court can reasonably infer the amount of force used to detain Mr. Porter was significant.

14  *See Chew*, 27 F.3d at 1441 (holding that "severe" force was used to apprehend plaintiff

15  where dog was taught to seize suspects by biting and holding and plaintiff sustained

16  "serious lacerations").

17              **b.    The City of Hayward's interests**

18       The night that Officers Cox, Purnell, and Miller, along with Nicky, entered Mr.

19  Porter's yard, they were responding to a "high priority" armed robbery of a Domino's Pizza

20  that had just occurred. Fovel Decl., Dkt. No. 43 at 19:20. The suspect was armed with a

21  handgun and had fled on foot into the community. *Id.* at 23:1, 6; 28:17-22; 35:11-12, 15-

22  20. The facts of the crime to which Hayward Police responded on the night of the incident

23  suggest that the City had an important government interest in securing the safety of the

24  community by apprehending an armed individual, who had fled and whose whereabouts

25  were uncertain, and who was suspected of committing a robbery.

26  //

27

28

### c.   There is a dispute of material fact about whether Cox's actions were reasonable.

The three *Graham* factors, as well as other circumstances bearing on the reasonableness of a seizure, must be considered "in relation to the amount of force used to effect a particular seizure." *Chew*, 27 F.3d at 1441. Hayward Police Department's initial deployment of Officer Cox and Nicky may have been reasonable to track an armed suspect fleeing the scene of a crime, but other facts came into play as Cox and Nicky pursued their trail to Mr. Porter's backyard. Specifically, after trailing a scent from the pizza shop, Nicky's track led the officers to an eight-foot-high concrete wall, on the other side of which were mobile homes. *Id.* ¶¶ 19-20. Officer Cox stood on a wooden pallet, looked over the wall and "saw the backyards of several mobilehomes and landscaping," and decided to lower Nicky into the backyard. *Id.* ¶¶ 21-22.

In addition, whether Nicky was unsupervised is also a factor that must be considered. Officer Cox and Officer Purnell gave inconsistent statements about whether Nicky was supervised in the yard. Cox states that he lowered Nicky over the wall by his leash, but that Nicky remained lying down until Cox jumped down off the wall into Mr. Porter's backyard and gave Nicky the command to "track." *Id.* ¶¶ 24-25. Officer Purnell testified that Cox was still standing on the wooden pallet, not in Mr. Porter's backyard, when Cox announced that it sounded like Nicky had apprehended the suspect. Purnell Decl., Dkt. No. 43 at 44: 14-18. Purnell states that Cox did not go over the wall and enter Mr. Porter's backyard until after Cox announced that Nicky had a bite. *Id.* at 45:12-15.

In sum, Cox made the decision to deploy a police dog trained to bite and hold into the backyard of a mobile home on a thirty-three-foot leash without warning. Defendants assert that this was reasonable under the circumstances. Plaintiffs cite to the testimony of Lieutenant Brian Matthews, the K-9 Unit Manager, who stated that in a residential area, K-9 handlers should keep their dogs in close proximity and in view at all times. Matthews Depo., Dkt. No. 43 at 107:4-7, 108:19-25. Plaintiffs also rely on Sergeant Sisson's testimony that Cox's decision not to give a warning was prudent, but that common practice

1   is to have cover officers tell nearby residents to stay in their homes and to bring their pets

2   inside.  Sisson Depo., Dkt. No. 43 131:2-132-20.  The testimony of Sisson and Matthews

3   calls into question the reasonableness of Cox's decision to deploy Nicky, on a thirty-three-

4   foot leash, into the backyard of a private residence, without giving any warning to those

5   residents.  This, coupled with the disputed fact of whether Cox remained on the far side of

6   the wall while Nicky searched through Mr. Porter's backyard, eventually biting and

7   severely injuring Porter, leaves a sizeable task for the jury in determining whether Cox's

8   use of Nicky was reasonable under the circumstances.  Accordingly, the Court DENIES the

9   motion for summary judgment on plaintiffs' § 1983 claim against Cox for the use of

10  excessive force.

11          **3.      Officers Purnell and Miller are liable for Cox's unreasonable actions**.

12          "[P]olice officers have a duty to intercede when their fellow officers violate the

13  constitutional right of a suspect or other citizen."  *Cunningham v. Gates*, 229 F.3d 1271,

14  1289 (9th Cir. 2000).  "[T]he constitutional right violated by the passive defendant is

15  analytically the same as the right violated by the person who strikes the blows."  *United*

16  *States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) *aff'd in part, rev'd in part*, 518 U.S.

17  81 (1996).  An officer who fails to intervene when his fellow officers use excessive force to

18  effect a seizure would be responsible, like his colleagues, for violating the Fourth

19  Amendment.  *Id.*  Officers are liable for a breach of this duty only if they had "a realistic

20  opportunity" to intercede.  *Cunningham*, 229 F.3d at 1289.

21          Officer Purnell held one end of Nicky's leash as Officer Cox lowered him into Mr.

22  Porter's backyard.  Purnell Depo., Dkt. No. 43 at 43:5-10.  With the means of lowering

23  Nicky over the wall in his hands, Officer Purnell had a realistic opportunity to stop Cox.

24          Officer Miller stood to Purnell's right while Cox looked over the wall, but was not

25  involved in hoisting Nicky into Mr. Porter's backyard.  Purnell Depo., Dkt. No. 43 at 40:10-

26  11.  Purnell stated that it took only a few seconds to get Nicky over the wall.  Purnell Depo.,

27  Dkt. No. 43 at 44:8-11.  Nevertheless, reading these facts in the light most favorable to

28  plaintiffs, it is reasonable to infer that in the time it took for Cox to look once over the wall,

Case No. 12-cv-01613 NC
ORDER RE: MOTION FOR SUMMARY                    12
JUDGMENT

get the dog, ask for Purnell's assistance, and lower the dog into the yard, Miller had a realistic opportunity to intervene.

Accordingly, the Court DENIES the motion for summary judgment on plaintiffs' § 1983 claim against Purnell and Miller for the use of excessive force.

**4.     In the absence of clearly established law, Officers Cox, Purnell, and Miller are entitled to qualified immunity from plaintiffs' § 1983 claim.**

Defendants argue that Officers Cox, Purnell, and Miller are entitled to qualified immunity, even if the deployment of Nicky constituted unreasonable force.  "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Although the Court has concluded that a triable issue of fact exists as to the reasonableness of Cox's actions, and therefore as to whether a constitutional violation occurred, it may consider whether the constitutional right at issue was clearly established at the time of the incident before determining whether it was violated.  *Id.* at 242 ("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").  In addition, a defendant's potential immunity should be resolved "at the earliest possible stage in litigation." *Id.* (citation and internal quotation marks omitted).

Whether a right was clearly established must be determined "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "The contours of the right must be sufficiently clear"; a general allegation of a constitutional violation would "convert the rule of qualified immunity . . . into a rule of virtually unqualified liability." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  In other words, it must be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The Court first looks to binding precedent to see if the right is clearly established. *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013).  "If none is on point, [the Court] may consider other decisional law." *Id*.  But, "officials can still be on notice that

Case No. 12-cv-01613 NC
ORDER RE: MOTION FOR SUMMARY              13
JUDGMENT

1   their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*,

2   536 U.S. 730, 741 (2002).  Cases involving similar facts can provide strong support for the

3   conclusion that a law is clearly established, but the "salient question" is whether the state of

4   the law at the time of the incident gave the official "fair warning" that his action was

5   unconstitutional.  *Id.*  "[W]hether the law was clearly established, is a pure question of law

6   for the court to decide." *Mendoza*, *v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994).  "If the law

7   did not put the officer on notice that his conduct would be clearly unlawful, summary

8   judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

9       "[W]hether [a seizure] involves physical restraint, use of a baton, use of a gun, or use

10  of a dog," the reasonableness of the force used is analyzed in the same way. *Mendoza*, 27

11  F.3d at 1362.  But "a general allegation [of unreasonable force] is not enough to overcome a

12  defendant's qualified immunity." *Id.* at 1361.  Here, plaintiffs define the constitutional right

13  at issue as the right to be free from injury caused by a police dog deployed unseen into a

14  residential area without a prior warning.  Pls.' Opp'n, Dkt. No. 46 at 16-17.  Using a police

15  dog trained to bite and hold to effectuate a seizure is not a per se use of excessive force.

16  *Watkins v. City of Oakland*, 145 F.3d 1087, 1092 (9th Cir. 1998).  Rather, a plaintiff must

17  show that it was clearly established that, under the circumstances, the use of the police dog

18  was unlawful. *Chew*, 27 F.3d at 1448 (discussing *Mendoza*).  Therefore, in order to survive

19  summary judgment on this issue, Mr. Porter's constitutional right to be free from such a

20  seizure must include the right to be warned that the dog will be used.

21      "[W]arnings should be given, when feasible, if the use of force may result in serious

22  injury, and . . . the giving of a warning or the failure to do so is a factor to be considered in

23  applying the *Graham* balancing test." *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir.

24  2001).  No Ninth Circuit case holds explicitly that failure to warn before seizure by a police

25  dog constitutes a violation of the Fourth Amendment.  Nearly every case in which the Ninth

26  Circuit analyzed the reasonableness of a police seizure by dog bite takes note of the

27  officer's warning, however. *Miller*, 340 F.3d at 965 (officer's warning that he was about to

28  release a police dog onto the plaintiff's property made officer's beliefs reasonable that

Case No. 12-cv-01613 NC
ORDER RE: MOTION FOR SUMMARY          14
JUDGMENT

suspect's continued defiance posed a threat to officer safety and that force used was not

excessive because less drastic alternatives had failed); *Watkins*, 145 F.3d at 1092 (officers

announced their presence and that a police dog would be released if the suspect did not

surrender); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 517 (9th Cir. 1999) (officers

gave three warnings in both Spanish and English before releasing police dog into a closed

theater pursuant to burglary reports); *Vera Cruz v. City of Escondido*, 139 F.3d 659, 660-61

(9th Cir. 1997), *overruled on other grounds by Smith v. City of Hemet*, 394 F.3d 689 (9th

Cir. 2005) (officer gave two verbal warnings before sending police dog after fleeing

suspect, who was drunk and had been harassing restaurant employees); *Smith v. City of

Hemet*, 394 F.3d 689, 694 (9th Cir. 2005) (officers warned suspect that police dog could be

sent to subdue him and might bite if he failed to obey order to turn around with his hands on

his head).

        At least two circuits have expressly held that an officer's failure to warn before

deploying a police dog violates the Fourth Amendment.  In the Fourth Circuit, it was clearly

established as early as 1991 that "failing to give a verbal warning before deploying a police

dog to seize someone is objectively unreasonable and a violation of the Fourth

Amendment."  *Vathekan* , 154 F.3d at 179 (officer's failure to warn before deploying police

dog in multifamily home where cotenant was asleep in her bed and bitten by dog was

objectively unreasonable).  The Eighth Circuit held that after 2003, it is "always

unconstitutional to use a police dog to bite and hold a suspect without giving a prior

warning."  *Szabla v. City of Brooklyn Park, Mn.*, 429 F.3d 1168, 1173 (8th Cir. 2005),

*vacated in part on reh'g*, 437 F.3d 1289 (8th Cir. 2006).  Relying on this precedent, one

district court in the Ninth Circuit found that a non-concealed suspect has a clearly

established right to be warned before a police dog is released to bite, if a warning would not

jeopardize the officer's safety.  *Dickinson v. City of Kent*, No. 06-cv-1215 RSL, 2007 WL

1830744, *8 (W.D. Wash. June 25, 2007).

        Conversely, the Eleventh Circuit held that an officer's failure to warn did not render

his use of a police dog trained to bite and hold objectively unreasonable because the

1  department's manual made the warning discretionary where a warning would "allow the

2  offender to escape" and the officer was concerned about the potential flight of the suspect.

3  *Grimes v. Yoos*, 298 F. App'x 916, 923-24 (11th Cir. 2008).  Similarly, the Seventh Circuit

4  affirmed summary judgment for an officer holding that the fact that the suspect was in the

5  act of fleeing did not afford the opportunity to warn.  *Johnson v. Scott*, 576 F.3d 658, 661

6  (7th Cir. 2009).  And the Tenth Circuit declined to hold that a warning was required before

7  police used a dog to seize a plaintiff when faced with an imminent threat.  *Thomson v. Salt*

8  *Lake Cnty.*, 584 F.3d 1304, 1321 (10th Cir. 2009).  Likewise, district courts have found no

9  clearly established right to warn a concealed target that a police dog will be used.  *Fallis v.*

10  *Sasaki*, No. 09-cv-5730 BHS, 2011 WL 111724, *12 (W.D. Wash. Jan. 13, 2011);

11  *Dickinson*, 2007 WL 1830744, *7 (W.D. Wash. June 25, 2007) (finding that reasonable

12  officer could conclude that "in situations where the location of a suspect is less evident, a

13  warning would place the officers at undue risk from a hiding suspect"); *Ohlsen v. Cnty. of*

14  *San Joaquin*, No. 206-cv-2361-GEB-GGH, 2008 WL 707364, *6 (E.D. Cal. Mar. 14, 2008)

15  (finding not clearly established that officers had to give second warning about police dog

16  once inside home because they feared that could alert plaintiff, whom they believed to be

17  armed, to their position).

18      In sum, two circuits have held that warnings are required before deploying a police

19  dog.  Three others have concluded that a prior warning is not dispositive of the

20  reasonableness of seizing an individual with a police dog, and thus there is no clearly

21  established right to be warned.  District courts applying this precedent have been similarly

22  split, depending on the circumstances of the seizure.  The Court concludes that the law is

23  not clearly established to put the individual officers here on notice that failing to give a

24  warning before entering Mr. Porter's backyard was unlawful.  The Ninth Circuit's

25  consideration of verbal warnings as just one factor of many in its analyses of the

26  reasonableness of such seizures supports this conclusion.

27      Because the law was not clearly established, it was not clear to Officer Cox that his

28  actions were unlawful.  Nor could it have been clear to Officers Purnell and Miller that they

had a duty to intervene and stop Cox's deployment of Nicky. *See Motley v. Parks*, 383 F.3d 1058, 1071 (9th Cir. 2004) (denying qualified immunity to officers who failed to intervene where law clearly established use of force was excessive). The individual officers are therefore entitled to qualified immunity from plaintiffs' excessive force claim under § 1983, and the Court GRANTS the individual officers' motion for summary judgment.

### 5.    There is a dispute of material fact regarding the City's liability for the actions of Cox, Purnell, and Miller.

Qualified immunity is not available to the City of Hayward, however. *Leatherman v. Tarrant Co. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993) ("Municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983."). "If a plaintiff establishes he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983." *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002).

For the City to be liable under § 1983, a municipal "policy or custom" must have caused the constitutional injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality," however; "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiffs assert three different theories of municipal liability: (1) that Hayward has an unconstitutional policy of allowing its officers to deploy police dogs "in circumstances where innocent third parties or bystanders may be in harm's way"; (2) that Hayward failed to properly train, supervise, and control police officers regarding the proper use of the dogs; and (3) that Hayward failed to discipline officers for improperly using its police dogs, thereby ratifying unconstitutional behavior. Pls.' Compl., Dkt. No. 1 ¶¶ 37-39.

### a.    Hayward's practice of deploying the K-9 unit

"In considering whether a municipality itself violated a person's rights or directed its employee to do so, the focus is on the municipality's policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). Plaintiffs may also establish liability by showing that "the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citation and internal quotation marks omitted). Here, plaintiffs assert that Hayward has a de facto policy of "allowing poorly trained dogs to go on police missions where they are likely to attack innocent persons," which is exacerbated by the City's bite and hold policy. Dkt. No. 46 at 19.

Defendants contend that summary judgment is appropriate because plaintiffs cannot establish that Hayward's policy caused the use of force against Mr. Porter. Dkt. No. 27 at 16. Defendants point to the fact that Officer Cox was unaware of Mr. Porter's presence and that Officer Cox allegedly only commanded Nicky to track. *Id.*

Plaintiffs have already shown a dispute of fact as to whether Nicky was trained only to bite and hold, or whether he could also track without biting. Moreover, plaintiffs have shown that prior to biting Mr. Porter, Nicky had bitten three other people who were not the intended targets of his search. Cox Decl., Dkt. No. 27-3 ¶ 9a; Cox Depo., Dkt. No. 43 at 67-71. For example, in early 2011, Nicky, under Officer Cox's supervision, bit a non-suspect while attempting to apprehend a suspect in an armed robbery. Cox Depo., Dkt. No. 43 at 67:12-24. The suspect was just outside the open doorway to a business. *Id.* at 68:11-12. When he would not surrender to the police, Cox ordered Nicky to apprehend the suspect. *Id.* at 67:17-19. Instead Nicky ran past the suspect, into the business, and bit another man unrelated to the robbery. *Id.* at 70:5-6, 71:6-8. Cox chased after Nicky and found him biting the victim's leg. *Id.* at 70:8-17, 71:6-8.

Sisson testified that he had never discussed how frequently Nicky failed at searching for people in either deployment or training. Sisson Depo., Dkt. No. 43 at 137. Yet, Cox and Nicky responded to 3,100 calls for service in Nicky's time with the Hayward Police Department. Cox Decl., Dkt. No. 27-3 ¶ 9a.

Considering the facts in the light most favorable to plaintiffs, it remains for the jury to decide whether Nicky's training was sufficient for the work the City had him doing and whether the City's continued deployment of Cox and Nicky was a practice that resulted in the violation of Mr. Porter's Fourth Amendment rights.

### b.   Failure to train

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). This deliberate indifference standard is objective, and plaintiffs do not need to show that the municipality foresaw that their conduct would result in a constitutional violation. *Gibson*, 290 F.3d at 1195. "A jury may infer that a municipality made such a deliberate choice 'when a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* at 1194 (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 410). Whether a municipality has displayed a policy of indifference is generally a question for the jury. *Id.*

Considering them in the light most favorable to plaintiffs, the facts plaintiffs have put forth to show the City has a policy of using improperly trained dogs are equally supportive of their theory that the City's failure to train their K-9 unit resulted in a violation of Mr. Porter's constitutional rights. From these facts, a reasonable jury could conclude that the City disregarded the obvious consequence that Nicky would bite a person other than the intended target of his search by continuing to deploy Nicky and Officer Cox.

### c.   Ratification

A third means of proving municipal liability is to establish that an official with policy making authority makes a deliberate choice to ratify a subordinate's unconstitutional action and the basis for it. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010). For example, "the failure of an official to take any remedial steps after the violations" can indicate a deliberate choice and establish a basis for liability. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001). Plaintiffs allege that defendants failed to adequately discipline Cox, Purnell, and Miller. Dkt. No. 1 ¶ 39. They also contend that

Case No. 12-cv-01613 NC
ORDER RE: MOTION FOR SUMMARY       19
JUDGMENT

1   Sisson's failure to investigate the incident further effectively approved Cox's conduct.  Dkt.
2   No. 46 at 20-21.

3         After Nicky bit Mr. Porter, Officer Cox called Sergeant Sisson to report the bite.
4   Sisson encouraged him that he did nothing wrong, affirmed that he could not have done
5   anything differently, and called the incident an unfortunate accident.  Sisson Depo., Dkt.
6   No. 43 at 120:6-121:4.  Yet both Sisson and Matthews testified that Cox should have kept
7   Nicky in close proximity and alerted the residents before continuing the search through their
8   backyards.  Furthermore, Sisson did not investigate the incident other than speaking to Cox
9   and reviewing his report.  Sisson Depo., Dkt. No. 43 at 140:6-17.  He did not read the other
10  officers' reports or the dispatch report.  *Id.* at 122:21-123:9; 124:12-13.  Nor did any of
11  Sisson's supervisors ask whether the deployment was reasonable.  *Id.* at 141:4-9.  Sisson
12  did, however, discuss the incident with the K-9 handlers at a meeting.  *Id.* at 141:15-17.
13  Drawing all inferences in favor of plaintiffs, the Court finds that plaintiffs have shown a
14  dispute of material fact as to whether the City's failure to investigate and discipline the
15  officers for use of force against Mr. Porter demonstrates that the City ratifies
16  unconstitutional conduct.

17  **B.    Plaintiffs' Claim for Loss of Companionship Without Due Process**

18        Substantive due process is not the proper framework for plaintiffs' claims of
19  unreasonable force; the Fourth Amendment is.  *Graham*, 490 U.S. at 395 ("[A]ll claims that
20  law enforcement officers have used excessive force, deadly or not, in the course of an
21  arrest, investigatory stop, or other seizure, of a free citizen should be analyzed under the
22  Fourth Amendment and its reasonableness standard, rather than under a substantive due
23  process approach.").  Plaintiffs concede that their substantive due process claim is an
24  alternative argument to their claim under the Fourth Amendment.  The Court GRANTS
25  defendants' motion for summary judgment on this claim.

26  //

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## C.   State Law Claims

### 1.   Assault and battery

Plaintiffs assert that defendants assaulted and battered Mr. Porter causing his injuries and wrongful death.  Because plaintiffs bring this claim against police officers, they must prove that defendants used unreasonable force in addition to the elements of battery.  *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (Cal. Ct. App. 1998) ("Plaintiff must prove unreasonable force as an element of the tort.").

Defendants contend that summary judgment is appropriate because Officer Cox did not have the requisite intent to commit a tort.  But, the element of intent in a claim for civil battery may be satisfied by showing that defendant acted with willful disregard for the plaintiff's rights.  *Avina*, 681 F.3d at 1131 n.3.  Plaintiffs have shown that Cox deployed a dog trained to bite and hold on a thirty-three-foot leash over a wall and into a backyard without warning.  This is sufficient to establish a dispute as to whether Cox's decision evinces a reckless or willful disregard for a plaintiff likely to be in that backyard, as Mr. Porter was.

Moreover, there is a triable issue of fact regarding whether the force used by the individual officers was excessive.  The officers' qualified immunity, which shields them from liability for plaintiffs' § 1983 claim, is inapplicable to plaintiffs' state law tort claims. *Cousins v. Lockyear*, 568 F.3d 1063, 1072 (9th Cir. 2009) ("[Q]ualified immunity is a doctrine of federal common law and, as such, has no application to Cousins' state claims, which are subject only to state statutory immunities.").

Nor does California law provide a basis for immunity.  California denies immunity to police officers who use excessive force in arresting a suspect.  *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002).  Thus to the extent that Officer Cox's deployment of Nicky was unreasonable force and thus constituted a battery, no state statutory immunity shields him from liability.  Likewise, the failure to intervene in another officer's use of excessive force is in independent omission, and not a claim immunized by California

1    Government Code § 820.8.  *Radwan v. Cnty. of Orange*, No. 08-cv-0786 AG, 2010 WL

2    3293354, *26 (C.D. Cal. Aug. 18, 2010) *aff'd*, 11-56415, 2013 WL 2177366 (9th Cir. May

3    21, 2013).  Accordingly, Officers Purnell and Miller are also not shielded from liability if

4    the jury concludes that Mr. Porter's was battered.  Therefore summary judgment is

5    inappropriate on plaintiffs' assault and battery claim.

6        **2.    Negligence**

7        Plaintiffs assert that "[d]efendants had a duty to act with due care to avoid

8    unnecessary or unjustified harm," and their breach of this duty caused Mr. Porter's injuries

9    and wrongful death.  Dkt. No. 46 at 22.  Plaintiffs also allege that the City breached its duty

10   of care in the hiring, supervision, and training of police officers.  Dkt. No. 1 at 12.

11       "Law enforcement officers do have a duty to refrain from unreasonable use of deadly

12   force."  *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1094 (Cal. Ct. App. 2004).

13   And the California Supreme Court has suggested that a claim for negligence may be

14   brought for the unreasonable deployment of a police dog.  *Hernandez v. City of Pomona*, 46

15   Cal. 4th 501, 520-21 (Cal. 2009) (determining that no reasonable juror could find officer

16   acted unreasonably in releasing dog but declining to address defendants' claims that they

17   owed no duty and were immune).  The standard of reasonableness applicable in a

18   negligence action under California law is the same as that in a § 1983 claim.  *Id.* at 513-17.

19       Defendants move for summary judgment on plaintiffs' negligence claims against the

20   City, Purnell, and Miller, but not Cox.  Dkt. No. 27-1 at 26-27.  Defendants argue that

21   Purnell and Miller are immune from suit.  As discussed above, Officers Purnell and Miller

22   are not immune from the use of unreasonable force.  *Robinson*, 278 F.3d at 1016.

23   Accordingly, the Court DENIES summary judgment on plaintiffs' negligence and wrongful

24   death claims against Purnell and Miller.

25       Public agencies are not liable for their own negligent conduct or omissions, such as

26   the failure to train or supervise, absent a specific statutory duty.  *Eastburn v. Reg'l Fire*

27   *Prot. Auth.*, 31 Cal. 4th 1175, 1179-80 (Cal. 2003); *Munoz*, 120 Cal. App. 4th at 1112

28   (finding no statutory basis for imposing liability on city for failing to train police officer in

1   wrongful death suit).  Plaintiffs cite no statute that imposes a duty of care on the City to

2   train its K-9 Unit.  Accordingly, the Court GRANTS summary judgment on plaintiffs'

3   direct liability negligence claim against the City.

4           **3.      Municipal liability for state law claims**

5           Plaintiffs allege that the City is vicariously liable under California Government Code

6   § 815.2 for its state law claims of assault and battery, negligence, and wrongful death

7   against Cox, Purnell, and Miller.  Unlike its federal counterpart, *Monell*, California law

8   imposes liability on municipalities for the actions of their employees under the doctrine of

9   respondeat superior.  *Robinson*, 278 F.3d at 1016; Cal. Gov't Code § 815.2.  Under § 815.2,

10  a public entity is liable for the injuries caused by its employees within the scope of their

11  employment unless the employee is immune from liability.  As discussed above, Officers

12  Cox, Purnell, and Miller are not immune from plaintiffs' state law claims.  Consequently,

13  neither is the City.  The Court DENIES summary judgment on this issue.

14          **4.      California Civil Code § 3342**

15          California Civil Code § 3342 imposes liability on dog owners.  The City owns Nicky

16  and does not move for summary judgment on this claim.  Dkt. No. 27 at 20.

17  **D.   Punitive Damages**

18          Plaintiffs seek punitive damages.  "[A] jury may be permitted to assess punitive

19  damages in an action under § 1983 when the defendant's conduct is shown to be motivated

20  by evil motive or intent, or when it involves reckless or callous indifference to the federally

21  protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  As summary judgment

22  is granted for the individual defendants, the only remaining claim under § 1983 is against

23  the City.  Plaintiffs have already shown a dispute of fact as to whether the City acted with

24  deliberate indifference.  This dispute is sufficient for the issue of punitive damages to go

25  before the jury.

26          California law conditions punitive damages on a showing that the defendant is guilty

27  of "oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  Malice, as define in that

28  section, includes "willful and conscious disregard of the rights or safety of others."  *Id.*

§ 3294(c)(1).  Plaintiffs have shown a dispute of fact as to Cox's state of mind when sending Nicky over the well, as well as the City's level of intent when it decided to continue to deploy Cox and Nicky.  This dispute is sufficient for the issue of punitive damages to go before the jury.

The Court DENIES defendants' motion for summary judgment on the availability of punitive damages.

## IV. CONCLUSION

Because the law does not clearly establish a right to be warned of an impending seizure by a police dog, Officers Cox, Purnell, and Miller are entitled to qualified immunity, and the Court GRANTS the motion for summary judgment on plaintiffs' § 1983 excessive force claim against the officers.  Whether the conduct of the officers was reasonable, however, is disputed.  Construing the facts in favor of plaintiffs, a jury may infer that the City was deliberately indifferent in continuing to deploy Cox and Nicky in spite of Nicky's having bitten bystanders in the past.  Accordingly, the Court DENIES summary judgment on plaintiffs' § 1983 excessive force claim against the City.

Because Officers Cox, Purnell, and Miller are not immune to plaintiffs' state law claims, neither is the City.  Moreover, plaintiffs have established a dispute of material fact as to an essential element of these torts.  Therefore, Court DENIES defendants' motion for summary judgment on plaintiffs' state law claims.

The following claims remain to be tried in this case:

(1)     § 1983 claim for excessive force against the City of Hayward;

(2)     assault and battery, negligence, and wrongful death against the officers;

(3)     vicarious liability against the City for the tortious acts of the officers;

(4)     California Civil Code § 3342 claim against the City.

IT IS SO ORDERED.

Date: June 11, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge

Case No. 12-cv-01613 NC
ORDER RE: MOTION FOR SUMMARY JUDGMENT                    24